THOMAS SNELL *et al.*

*v.*

JAMES DeLAND.

*Filed at Springfield March 30, 1891.*

1. PARTNERSHIP—*managing partner—losses—expenditures, etc.* The managing partner of a firm is not to be treated as an insurer of the assets in his hands.  He can only be held for a loss of property when such loss occurs from a willful disregard of duty.  If he incurs expenses in managing and improving partnership lands, with the knowledge and consent of his co-partners, he should be allowed, upon an accounting with his co-partners, for the expenditures so made.  So if he buys a timber tract for the firm, and the timber thereon is cut off, and the firm receives the benefit of the timber so taken off, he should be allowed the price paid by him for such timber land.

2. So where one partner charges himself personally, in his account, with money belonging to the firm, in stating the account the master should give him credit for such sums as he may have paid out for the benefit of the firm.

3. MASTER'S REPORT—*sufficiency.*  A master's report of his statement of a partnership accounting is sufficiently definite, if, when considered in connection with the accounts of the respective parties, all the items allowed or rejected can be readily ascertained.

4. SAME—*time to object.*  If a master, in stating an account between partners, erroneously allows an item in favor of one of the parties, exception should be taken to the allowance before the master, and if the exception is disallowed, it should be renewed in the trial court.  An objection to the report comes too late on appeal to this court, when not made in the court below.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. THOMAS F. TIPTON, for the appellants:

It was the duty of defendant, on taking charge of the farm and converting the timber thereon into money, to use reasonable and proper care for the safety and preservation of the property, and if he did not, he is liable for the breach of duty.

*Murphy* v. *Crafts*, 13 L. C. Ann. 519; *Benghner* v. *Black*, 83 Ky. 521; *Corlin* v. *Donegan*, 15 Kan. 495.

Defendant should have been required to account for the plunder account, and should be allowed for no improvements, sprouting, or anything of that kind, while he was in possession of the land.

The report of the master is not in conformity to the practice, nor can it be determined definitely what items were or were not allowed.

Messrs. MOORE & WARNER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Thomas Snell and James T. Snell on the 13th day of December, 1883, against James DeLand, for partition of two tracts of land in DeWitt county, one known as the "Coulter farm," consisting of about six hundred acres of land, the other known as the "Weaver farm," consisting of about four hundred acres of land. The bill also prayed for an account, and alleges that appellants and appellee each owned one-third of said lands; that appellee, James DeLand, took upon himself the management and control of the Coulter farm, rented the same, and collected the rents and proceeds of the same from the date of the purchase of the same to the filing of the bill, and appropriated the same to his own use; that he took from said farm large quantities of wood, poles, rails, posts and logs; that he had the logs sawed into lumber to the extent of over eighty thousand feet, and sold and disposed of all the lumber and other material taken from the land, to his own use, and has not accounted to appellants for the same; that the proceeds from the rents and from the sale of the materials are large, but the exact amount can not be stated. The bill prays for partition, and for an accounting by appellee, James DeLand, for all money and property that came to his hands, and for general relief.

The answer of DeLand admits that appellants and appellee owned the lands in controversy as tenants in common; that he took upon himself the management and control of the lands, and that he controlled and managed the same and collected the rents and profits thereof, but denies that he has had the control of the same since the spring of the year 1883, and avers that appellants have had control of the lands since that time, and that they have collected large sums of money, and that they have not accounted for the same; denies that he has taken any materials, lumber, posts, wood, etc., not accounted for. To the answer a replication was filed.

On the 23d day of October, 1886, Emma L. Magill, the owner through judicial sales of DeLand's interest in the Coulter lands, was made a party. The case was continued from term to term until April 5, 1887, when a decree was entered by the circuit court, finding that the Weaver land was then owned by the appellants and appellee in equal and undivided parts; that the Coulter land was then owned by the appellants and said Emma L. Magill in equal and undivided parts; that the appellants had had exclusive possession and control of the Weaver land since its purchase, receiving the rents, issues and profits thereof, and that there was due the appellee from them, jointly, on account thereof, up to that date, the sum of $555.33; that appellee had had exclusive possession of the Coulter land during the years 1881 and 1882, receiving the rents, issues and profits thereof; that the appellants had had the exclusive possession of the last mentioned lands, receiving the rents, issues and profits thereof, since 1882, "and that, so far as the land known as the 'Coulter land' is concerned, the said Thomas Snell, James T. Snell and James DeLand have, since they became the owners thereof, each received the same amount of rents, issues and profits, and that, so far as the rents, issues and profits of said lands known as the 'Coulter land' are concerned, their accounts against each other are equally balanced and squared, by agree-

ment made between the parties in open court;" that the cause be referred to John W. Bowren, as special master, to take the proofs and state an account between the parties, with directions that he should not consider or report upon any matter in relation to the rents received by either party for said Coulter lands, that question being settled between them, and appointing commissioners to make partition of all the lands according to the rights of the parties as found by the decree, *i. e.*, dividing the Weaver land equally between Thomas Snell, James T. Snell and James DeLand, and the Coulter land equally between Thomas Snell, James T. Snell and Emma L. Magill. The commissioners afterwards, on December 13, 1887, made their report that they had made partition of the Weaver land by setting off to Thomas Snell, James T. Snell and James DeLand each one-third in value thereof, and that the Coulter land was not susceptible of division. No exception was made to this report, and it was approved, and the master was ordered to sell the Coulter land, which he did, and the sale was reported and approved.

On September 5, 1888, the special master submitted his report to the court, finding that there was due from appellants to appellee $1320. The appellants filed exceptions to the report, which were overruled, and the court entered a decree in favor of DeLand for the amount stated in the report of the special master.

At the time the decree of April 5, 1887, was rendered, it was agreed by the parties, in open court, that there was due DeLand from the Snells, on account of rent received from the Weaver land, $555.33. The special master, in stating the account, gave DeLand the benefit of this item, and also allowed him the further sum of $301.66 rent on account of the Weaver land, from April 5 to the time the report was filed, and it is claimed that this last item was improperly allowed. No objection was made by the Snells to this item before the master or before the circuit court. They filed seven specific exceptions

to the master's report, but this is not embraced in the list. The appellants having failed to object to this part of the report before the master or in the circuit court, the objection now made for the first time comes too late. If the master erroneously allowed the item, the appellants were required to object before him, and, if overruled, renew the objection before the circuit court.

It is next claimed that the master erroneously allowed DeLand $1969.38 on account of money paid by him on one of the notes given for the Coulter land. The firm of Snell & Co., composed of appellants and appellee, kept a bank account at the DeWitt County National Bank. Money was borrowed from the bank and placed to the credit of the firm, to be used in its business. DeLand checked on this account. In the statement of his account he charged himself, among other things, with $2400 deposited in bank to the credit of the firm at one time, and $3200 at another time. These two credits were on account of notes given the bank by the firm. The $1969.38, as we understand the evidence, was paid by check on the firm account, drawn by DeLand. As he had charged himself previously with this firm money, it was right, in stating the account, to give him credit for such sums as he paid out for the firm, and as the item in controversy was so paid, we think it was properly allowed by the master.

It is also claimed that the master erred in not allowing James T. Snell $2130 paid by him on one of the notes given for the Coulter land. This item is not embraced in the exceptions filed by appellants to the master's report, and, for the reasons heretofore given, can not be considered. Moreover, it was claimed on the trial by appellants that the lands were paid for by the parties jointly.

The next objection to the master's report is, that the master failed to charge appellee with the plunder account. Under the evidence we perceive no ground upon which this position can be sustained. In the purchase and management of the

lands the Snells and DeLand were, in effect, partners. They acted under the firm name of Snell & Co. It does not appear that DeLand appropriated any of the wood, lumber or other property, proceeds of the land in his charge, to his own use, nor does it appear that he failed to account for any of the proceeds of the land that came into his hands. Under such circumstances we perceive no ground upon which he can be held liable. The managing partner of a firm is not to be treated as an insurer of the assets in his hands. He can only be held for a loss of property when such loss occurs from a willful disregard of duty.

It is also claimed that DeLand should not have been allowed for sprouting, or improvements made on the land. The cutting and sawing done on the land seem to have been fully authorized. Indeed, all that was done by DeLand on the land was done with the knowledge and consent of the Snells, and we perceive no reason why he should not be allowed for the expenditures.

It is also claimed that the master's report is indefinite. When the report is considered in connection with the accounts of the respective parties, all that were allowed or rejected can be ascertained, and the report is plain and can be understood without trouble.

DeLand purchased five acres of timber land for $100, and it is insisted that he ought not to be allowed for the amount paid. The timber was cut off the land and accounted for. The Snells received the benefit from it. The lot was purchased for the firm, and the firm had the benefit resulting from the purchase, and no reason occurs to us why DeLand should not be allowed the amount paid for the property.

The decree, so far as is shown by the evidence, is fully sustained by the evidence, and the judgment of the Appellate Court affirming the decree will be affirmed.

*Judgment affirmed.*