MARION MARCUS, Plaintiff-Appellee, v. JAMES C. GREEN et al., Defendants—(JAMES C. GREEN, Appellant)—(HERMAN SCHROEDER, Third-Party Plaintiff-Appellee, v. JAMES C. GREEN, d/b/a Jim Green Construction Company, Third-Party Defendant-Appellant.)

(No. 70-36;

Fifth District—August 13, 1973.

700

Hoagland, Maucker, Bernard & Almeter, of Alton, (Robert B. Maucker, of counsel,) for appellant.

Callis, Filcoff, Brandt & Gitchoff, of Granite City, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from judgments entered on verdicts in the Circuit Court of Madison County, by James C. Green as defendant and as third party defendant.

While Marcus, the plaintiff appellee, was employed as a carpenter by James C. Green, d/b/a Jim Green Construction Company, the sole owner of which business was James C. Green, scaffolding on which Marcus was standing collapsed causing him to fall to the ground and suffer serious injuries. At the time of his injury James C. Green and Herman Schroeder and their wives were the owners of the real estate on which there was being constructed an apartment building, and in the course of that construction the scaffold upon which Marcus was standing collapsed. The parties stipulated that Marcus' injury occurred while he was in the course and scope of his employment. Marcus' application for adjustment of claim against Jim Green Construction Company was filed with the Illinois Industrial Commission and the insurance carrier for and on behalf of James C. Green, d/b/a Jim Green Construction Company paid Marcus certain temporary total compensation, and hospital and doctor bills.

Marcus brought this action against Green and Schroeder, individually and/or as partners or joint venturers alleging that those defendants were owners of the land on which the construction was taking place, that they were in charge of the construction or had the right to exercise control over it and that they were in violation of the Structural Work Act (Ill. Rev. Stat., ch. 48, sec. 60), commonly referred to as the Scaffold Act. Answering, Schroeder admitted that as a partner of Green he had an interest in the title to the ground and denied that either as a partner or individually, he was in any way in charge of the construction or that he had a right to control over the construction. He further averred that the partnership of Green and Schroeder had contacted with Jim Green, d/b/a Jim Green Construction Company to build the building referred to in the complaint, and that the sole responsibility for construction was in Green. Green in his answer neither admitted or denied that he and Schroeder, individually and/or as partners or joint venturers, owned the

land, or that the defendants were in charge of the construction or had the right to exercise control over it, and demanded strict proof of those allegations. In their separate answers both Schroeder and Green denied the allegations of the occurrence, their duty to comply with and their alleged violation of the Scaffolding Act, and the proximate cause and injuries alleged. Green attached and made a part of his answer, the application of Marcus for adjustment of claim against Jim Green Construction Company, filed with the Industrial Commission.

Green also filed an affirmative defense alleging that at the time of the alleged injury Marcus was an employee of Green who was the sole owner and proprietor of the business known as Jim Green Construction, and that Green on behalf of his construction business had elected to and was operating his business under the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1965, ch. 48, sec. 138 *et seq.*); that plaintiff had made application for adjustment of claim under that Act, and contended that plaintiff's only remedy against defendant Green was under that Act. Green prayed for judgment dismissing the complaint at plaintiff's cost. Plaintiff moved to strike the affirmative defense alleging that Green was attempting to set up the defense of Workmen's Compensation before the jury. The court denied the plaintiff's motion to strike and ordered that the affirmative defense should not be presented to the jury. Plaintiff then replied denying each and every allegation of the affirmative defense.

Schroeder filed a complaint as third party plaintiff against James C. Green, d/b/a Jim Green Construction Company as the third party defendant, seeking indemnification in the event Marcus recovered against him, Schroeder, based upon an alleged secondary or passive violation as compared to the primary or active alleged violation of James Green, d/b/a Jim Green Construction Company, and alleged the construction was under the exclusive control of the third party defendant. James C. Green, d/b/a Jim Green Construction Company answered the third party complaint, denying that the work was under the exclusive control of James C. Green d/b/a Jim Green Construction Company, denying that the third party defendant was the active and primary wrongdoer; denying that Schroeder was only secondarily or passively negligent, and denying that Schroeder was entitled to any rights of indemnity.

Upon trial, the jury found in favor of plaintiff Marcus against both Green and Schroeder and awarded him damages of $10,000. In addition, the jury found in favor of Schroeder on his party complaint against James C. Green, d/b/a Jim Green Construction Company. Upon judgment for plaintiff being entered against Green and Schroeder, and judgment for third party plaintiff Schroeder being entered against James C.

Green, d/b/a Jim Green Construction Company, a post trial motion was filed by defendant Green, and a separate post trial motion was filed by third party defendant Green. Both were denied. Defendant Schroeder filed no post trial motion.

Defendant Green has appealed from the judgment in favor of plaintiff Marcus, against him. Third party defendant James C. Green, d/b/a Jim Green Construction Company has appealed from the judgment in favor of third party plaintiff Schroeder against third party defendant. Defendant Schroeder has not appealed from the judgment in favor of plaintiff Marcus, and has received permission in this Court to adopt the brief of plaintiff Marcus as his brief. No brief has been filed by or on behalf of Schroeder in his capacity as third party plaintiff appellee in opposition to the position taken by James C. Green, d/b/a Jim Green Construction Company, that Schroeder, partner, has no action over against his partner, James C. Green.

Appellant (a single brief is filed as being that of appellant and third party defendant appellant James C. Green) states the issues to be:

1. Where there is the relationship of employer and employee between two parties and the employee admittedly has a cause of action against his employer, a sole proprietorship, under the Workmen's Compensation Act, does the employee have a separate cause of action under the Structural Work Act against his employer who is the part owner of property where the work is being done and where the employee is injured?

2. Does a workman have a cause of action under the Structural Work Act against a person who is a part owner of the property where the work is being done and where the workman is injured when that person is held not to be in charge of the work being done, but that person is also held to be a partner in the construction of the building with the employer of the workman?

3. Does one partner have a cause of action over against the other partner for the amount of a judgment rendered against him together with attorney's fees and costs where the judgment was rendered by virtue of the partnership relationship between the parties?

Those issues were raised by appellant several times on the pleadings resulting in amended pleadings. The same issues were then raised in his motions for directed verdicts and post trial motions. Appellant states in his brief, "In neither appeal is a new trial sought nor is any question being raised as to the size of the verdict, the rulings of the trial court on objections to evidence nor the propriety of instructions given or refused."

Upon the request of Green, and over the objections of both plaintiff Marcus and Schroeder, the trial court submitted two special interroga-

tories to the jury. These interrogatories and the jury's answers thereto were:

"Were the defendants, James C. Green and Herman Schroeder, partners in the construction of the building located at August Street and Washington Avenue in Granite City, Illinois, at the time of the plaintiff's alleged injury? Yes."

"Was the defendant, Herman Schroeder, at the time and place of the occurrence in question in charge of the work being done on the apartment building? No."

■■■ The objections were preserved by neither plaintiff nor Schroeder. From a factual point of view the answers to them stand unchallenged by any party. As a result the question of whether Green and Schroeder, who admittedly were owners, were partners in the construction of the building is resolved. While the question of whether Schroeder individually was in charge of the work was resolved in the negative, no specific finding was made as to whether Green, as a partner, was in charge of the work. Appellant contends in his brief that he was completely in charge of the work by virtue of his construction business, however in the answer to the third party action he denied that the work was under the exclusive control of James C. Green, d/b/a Jim Green Construction Company. Since the jury determined in response to appellant's submitted interrogatory that Schroeder individually was not in charge of the work, the only other party, who consistent with appellant's denial in his pleading, that could have shared control of the work was the partnership, since none of the parties contend any unnamed party had anything to do with the occurrence. The jury was instructed,

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

Where, by any wrongful act or omission of any partner acting in the ordinary course of business of the partnership, or with the authority of his co-partners, loss or injury is occasioned to any person, not being a partner of the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act."

As a result we are not impressed with appellant's disputing that he was also in charge of the work as a representative of the partnership. We therefore conclude that the general verdict, in favor of Marcus against Green and Schroeder, was based on the conduct of Green, as an owner and partner in charge of the work. A careful analysis of cases under the Scaffold Act leads to the conclusion of H. C. Sorenson in Strategy and Proof under the Illinois Structural Work Act, 59 Ill. Bar Journal 552

(March 1971) that "it is difficult to imagine any business firm connected with any given construction project to be beyond the reach of 'in charge.'" Under the Scaffold Act more than one person or firm may be in charge of a construction job on which an injury may occur as a result of the violation of the Act. See *Clements v. Schless Construction Company*, 91 Ill.App.2d 19, 234 N.E.2d 578 (Supp. Opinion) citing *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 321, 322, 211 N.E.2d 247 and *Gannon v. C.M.St.P. & P.Ry. Co.* (1961), 22 Ill.2d 305, 317-320, incl., 175 N.E.2d 785.

Appellant contends that he is entitled to a reversal of the Marcus judgment against him as a matter of law because as the employer of Marcus, Marcus' sole and exclusive remedy against him is under the Workmen's Compensation Act, supra, and that Marcus availed himself of that remedy. He points out that no corporate entity is here involved, and that one person cannot be two separate entities.

The Workmen's Compensation Act (Ill. Rev. Stat., ch. 48, sec. 138.5) provides that an employee has no common law or statutory right to recover from his employer. It was enacted in 1911 subsequent to the Structural Work Act, (Ill. Rev. Stat., ch. 38, sec. 60.) which had been enacted in 1907. In *Gannon v. C.M.St.P. & P.Ry. Co.* (1958), 13 Ill.2d 460 at 463, 150 N.E.2d 141, our Supreme Court pointed out that to the extent that the Workmen's Compensation Act prohibits an action by an employee against an employer, it has amended the Scaffold Act. The same principal was enunciated in *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630.

Appellee urges that one man can be legally at the same time, an employer, or owner in charge of the work, and a member of a partnership, and that Green was all three; that each is a different legal capacity; and the Scaffold Act by its Section 9 imposes liability on those who are in the legal capacity of owners in charge of the work, and provides a right of action against those in such legal capacity for willful violation of the Act. He points out that the terms "employer", "owner" and "partner" are concepts which relate to define legal capacities which may or may not be reposed simultaneously in the same person, and that in order to recover Marcus must show that Green was acting in a legal capacity which would cause him to be liable under the Scaffold Act, notwithstanding that Green was also acting in the legal capacity of employer. He contends that the interpretation of the interaction of the Workmen's Compensation Act and the Scaffold Act, as pronounced in the 1958 *Gannon* case, is not applicable under circumstances in which the employer is a partner in a partnership composed of individuals who are

owners and act as their own contractors, and that to apply such interpretation would render the Scaffold Act a nullity as to any such partnership arrangement of owners and contractors.

Appellee urges application of the "Dual Capacity Doctrine" under which, according to Larson "* * * an employer normally shielded from tort liability by the exclusive remedy principal may become liable in tort to his employee if he occupies, in addition to his capacity as employer, a second capacity that confers upon him obligations, independent of those imposed upon him as employer". (Larson's Workmen's Compensation Law, vol. 2, § 72.80 @ 1. 226.20) Appellee also points out that the Workmen's Compensation Act does not preclude an employee from bringing a statutory action against a third party tort feasor, and contends that accordingly it does not preclude Marcus from bringing an action against Green who in a different legal capacity than that of employer has placed himself vulnerable to liability under the Scaffold Act.

Although this is a question of first impression in Illinois, we find support for appellee's position in the case of *Reed v. The Yaka* (1963), 373 U.S. 410, where the petitioner, a longshoreman, filed a libel in rem action against a ship for injuries sustained while he was engaged in loading the ship as an employee of a corporation which was operating the ship under a bareboat charter. The corporation was considered as a shipowner pro hac vice under a bareboat charter. The defendant corporation contended that it could not be held liable in damages to the petitioner because it was the petitioner's employer, and that the Longshoremen's and Harbor Workers' Compensation Act provided that the compensation liability of an employer under that Act was exclusive and in place of any other liability. The Circuit Court of Appeals held in the defendant corporation's favor. However, the United States Supreme Court reversed and held that the defendant corporation could be liable for the ship's unseaworthiness, notwithstanding that the defendant corporation was also liable to the petitioner under the Longshoremen's and Harbor Worker's Compensation Act. The logic of permitting such a double recovery was grounded upon the necessity of recognizing and distinguishing the various duties and obligations that the defendant corporation had because it acted not only in the legal capacity as an employer, but also because it was acting as a shipowner and had the obligation to keep the ship seaworthy. As stated by the Supreme Court, after reviewing the prior decisions and the Longshoremen's and Harbor Workers' Compensation Act, at 415:

> "In light of this whole body of law, statutory and decisional, only blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic was not only an

employer of longshoremen, but was also a bareboat charterer, and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness, which it should not be permitted to avoid. We have previously said that the Longshoremen's Act 'must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.' We think it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service."

Thus, appellee's position that appellant could be liable for violating more than one legal duty finds support in the highest court of our land. The Structural Work Act—like the doctrine of seaworthiness—was designed to provide a remedy for personal injuries and property damage sustained by particular employees. This duty of an owner in charge of the work is entirely separate from the duty of an employer. We see no reason to suppose that the Workmen's Compensation Act has in any way limited the duty of an owner in charge to assure that scaffolds on construction property be kept safe. *Larson v. Commonwealth Edison Co.* (1965), 33 Ill.2d 316, 211 N.E.2d 247.

Nor do we believe that the appellee is barred from bringing suit by the language of the Workmen's Compensation Act, which provides that an employee has no common law or statutory right to recover from his employer. The holding in *Gannon v. C., M., St.P. & P.Ry. Co., supra,* is not applicable to the present facts, because that case involved an employer who was being sued under the Structural Work Act *as an employer.* The suit was properly dismissed, but the action in the instant case is not against the employer as employer. It is against an employer who is also an owner.

Furthermore, Illinois courts have permitted employers to be subjected to double liability under the Structural Work Act indirectly by way of indemnification. *Miller v. Dewitt* (1967), 37 Ill.2d 273, 226 N.E.2d 630 (architect and employer); *Krambeer v. Canning* (1962), 36 Ill.App.2d 428, 184 N.E.2d 747 (owner and employer); *Boston v. Old Orchard Business District, Inc.* (1960), 26 Ill.App.2d 324, 168 N.E.2d 52 (owner and employer); *Moroni v. Intrusion-Prepakt, Inc.* (1960), 24 Ill.App.2d 534, 165 N.E.2d 346 (owner and contractor); and *Palier v. Dreis and Krump Manufacturing Co.* (1967), 81 Ill.App.2d 1, 8, 225 N.E.2d 67, 72 (owner and employer), where the court said:

"An employer is capable of violating the terms of the Scaffold

Act as the person or thing 'having charge of', notwithstanding his absolute liability under the Workmen's Compensation Act."

██ Therefore, we are persuaded to agree with appellee that since the Workmen's Compensation Act provides for recovery by an employee against a third party tort-feasor, (Ill. Rev. Stat., ch. 48, § 138.5), he should be allowed to bring an action against the appellant who in a different legal capacity than that of an employer has placed himself vulnerable to liability under the Scaffold Act. To paraphrase the language of the United States Supreme Court in *Reed v. The Yaka, supra,* we think it would produce a harsh and incongruous result to distinguish between liability to employees injured under precisely the same circumstances simply because some worked on property owned by their employers and others worked on property owned by third parties. Accordingly, the judgment against Schroeder and Green is affirmed.

The remaining issue is whether the trial court erred in denying appellant's motion for judgment notwithstanding the verdict with regard to the third party complaint filed by Schroeder.

Appellant argues that, even if indemnification were proper, the trial court erred in allowing a suit by one partner against another partner before the accounts are settled and a balance struck.

The general rule is that one partner cannot sue the other at law until there has been a settlement of the partnership affairs and a balance struck. (*Milligan v. Mackinlay* (1904), 209 Ill. 358, 70 N.E. 685; *Olson v. Olson* (1965), 66 Ill.App.2d 227, 213 N.E.2d 95; *Carter v. Wright* (1934), 275 Ill.App. 224.) The mere dissolution of a partnership does not change the general rule. (*Davenport v. Gear* (1840), 3 Ill. 495; *Chadsey v. Harrison* (1849), 11 Ill. 151; *Ridgway v. Grant* (1855), 17 Ill. 117; *Burns v. Nottingham* (1871), 60 Ill. 531; *George v. Pfeil* (1910), 158 Ill.App. 261; *Commons v. Snow* (cert. denied 1915), 194 Ill.App. 569.) The principal reasons for the general rule were well summarized by the court in *Mayhew v. Craig* (1929), 253 Ill.App. 238, 241:

"1.) a dispute of this nature ordinarily involves the taking of a partnership account, for, until that is taken, it cannot be known that plaintiff is not liable to refund even more than he claims in the particular suit; 2.) in partnership transactions a partner does not as a rule become a creditor or the debtor of a copartner, but of the firm."

There are exceptions to the general rule if partnership accounts are not involved in the suit.

The established exceptions are listed in *Pugh v. Newbern* (1927), 193 N.C. 258, 261, 136 S.E. 707, 709:

"A partner may maintain an action at law against his copartner

upon claims growing out of the following facts: 1.) Claims not connected with the partnership. 2.) Claims for an agreed final balance. 3.) Claims upon express personal contracts between the partners. 4.) Failure to comply with an agreement constituting a condition precedent to formation of a partnership. 5.) Where the partnership is terminated, all debts are paid, and the partnership affairs otherwise adjusted, with nothing remaining to be done but the amount due by one to the other, such amount involving no complicated reckoning. 6.) *Where the partnership is for a single venture or special purpose, which has been accomplished, and nothing remains to be done except to pay over the claimant's share.* 7.) When the joint property has been wrongfully destroyed or converted. 8.) When one partner has been guilty of fraud in contracting the debt, or in incurring the obligation, or by concealing the property, or by other device defeating the rights of the complaining party."

Thus, the rule is not a hard and fast one, but is subject to exception.

In the case of *Mayhew v. Craig, supra,* it was held that one partner may maintain an action at law against another for breach of a partnership agreement where the damages belong exclusively to one partner and not to the firm, and can be assessed without taking an account of the partnership business and without inquiry as to the profits and losses or expenses of the firm or adjustment of any claims arising out of the business involved. The court said at 241: "The test seems to be * * * if the damages resulting from a breach of the partnership agreement by one partner belong exclusively to the other partner, and not to the firm, and can be assessed without taking an account of the partnership business." An earlier case, *Tichenor v. Newman* (1900), 186 Ill. 264, 275, made the same distinction in allowing an action at law upon a breach of a partnership agreement: "The benefit of their performance would inure to Tichenor individually and not to the firm."

■■ Since the action for indemnity in the instant case involves Schroeder personally rather than the firm, we feel that it may be brought in absence of a settlement and balance. The partnership in question here was for a single venture, and an action would lie without an accounting for that reason also. See *Myers v. Winn* (1854), 16 Ill. 135; and *Boyd v. Schnell,* (abstract only, 1917), 209 Ill.App. 187, where an action at law without accounting was allowed to members of single venture partnerships.

■■ Another consideration supporting the allowance of the third party suit is the policy behind Section 25 of the Civil Practice Act (Ill. Rev. Stat., ch. 110) dealing with third party proceedings, which is the avoid-

ance of a wastefully inefficient multiplicity of suits. *Reynolds v. Illinois Bell Tel. Co.* (1964), 51 Ill.App.2d 334, 201 N.E.2d 322; *Embree v. Gormley* (1964), 49 Ill.App.2d 85, 199 N.E.2d 250.

We therefore do not conclude that the court erred in denying the motion for judgment notwithstanding the verdict with regard to Schroeder's third-party complaint for the reason that the partnership accounts are not settled and a balance struck.

■■ Appellant also argues that there is no common law right of indemnification by one partner against another partner for loss or injury resulting from the act or omission of a partner acting in the ordinary course of business of the partnership. Appellee Schroeder adopted the brief of appellee Marcus, which is not responsive to the issue raised by appellant. Such a failure to meet and answer the grounds for reversal urged by appellant would alone be sufficient for reversal. (*Stubbs v. Austin* (1936), 285 Ill.App. 535, 2 N.E.2d 358. See also *Illinois Bell Telephone Co. v. Miner* (1956), 11 Ill.App.2d 44, 137 N.E.2d 1; *In re Estate of Pruett* (1971), 133 Ill.App.2d 499, 269 N.E.2d 356; Ill. Rev. Stat., ch. 110A, § 341(f).) However, since there is very little authority on the issue raised by appellant, we will consider the question. Section 13 of the Uniform Partnership Act (Ill. Rev. Stat., ch. 106½) provides that:

> "Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor the same extent as the partner so acting or omitting to act."

Section 15 of the Act further provides that "All partners are liable (a) jointly and severally for everything chargeable to the partnership under Section 13 * * *." In light of our holding that Schroeder and Green were partners and that Green was subject to liability under the Structural Work Act as an owner in charge of the work, the effect of Sections 13 and 15 is to render Schroeder jointly liable under the Structural Work Act.

■■ Generally, partnership losses occasioned by the conduct or poor judgment of one partner will be borne by the partnership in the absence of fraud, culpable negligence, or bad faith. (*Snell v. DeLand* (1891), 136 Ill. 533, 27 N.E. 183; *Crane and Bromberg on Partnership* 395 (1968); *I.L.P. Partnership* § 80.) This rule is also reflected in Section 18 of the Partnership Act (Ill. Rev. Stat., ch. 106½), which provides:

> "The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

(a) Each partner * * * must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits."

There is no indication in the record that Green's conduct as an owner in charge of the work was fraudulent, culpably negligent, or in bad faith. Furthermore, the injury which occurred could reasonably be anticipated in the construction business. Absent an express agreement of indemnification, we will not shift the liability for losses from risks which are inherent in the partnership business.

Accordingly, the judgment in favor of Schroeder on the third-party complaint is reversed.

Affirmed in part; reversed in part.

JONES and CREBS, JJ., concur.