(Nos. 79-CC-1008, 79-CC-1009, 79-CC-1010, 79-CC-1011–

MELBA JEAN THOMAS, Administratrix of the Estate of William N. Thomas, Deceased; DALE E. WALKER, ROBERT H. CONKLE, Administrators of the Estate of Robert J. Conkle, Deceased; SHARON D. PATCHETT, Claimants, *v*. THE STATE OF ILLINOIS and ILLINOIS DEPARTMENT OF CORRECTIONS, Respondents.

*Opinion filed May 13, 1980.*

FAWELL, JAMES, and BROOKS (JEFFRY J. KNUCKLES, of counsel), for Claimants.

WILLIAM J. SCOTT, Attorney General (MARSHA CAPRASO, Assistant Attorney, of counsel), for Respondents.

Roe, C. J.

These four claims arose out of the tragic deaths of four guards during the prison riot at Pontiac Correctional Center on July 22, 1978. On July 6, 1979, the Respondents moved to dismiss the claims. By order of the Court, the claims were consolidated on July 25, 1979. At the direction of the Chief Judge, Commissioner Robert Barnes, Jr., was assigned to hear oral arguments on said motion, and a hearing was held on November 15, 1979, at Room 122B of the Capitol Building in Springfield, Illinois.

The Respondents moved for involuntary dismissal pursuant to Section 48 of the Civil Practice Act, (Ill. Rev. Stat. 1977, ch. 110, par. 48) on the grounds that the Court of Claims lacks jurisdiction to hear and determine these claims. The issue before the Court is whether or not the exclusive remedy provision of Ill. Rev. Stat. 1977, ch. 48, par. 138.5a bars a common law action by the Claimants.

The Claimants' theory of recovery is based on the "dual capacity" theory which first appeared in *Marcus v. Green* (5th Dist. 1973), 13 Ill. App. 3d 699. The Court stated that the defendant was an owner of property as well as an employer and allowed plaintiff to proceed under both the Scaffolding Act and the Workmen's Compensation Act. This doctrine has been rejected by virtually all of the other Appellate Districts and limited on its facts by the 5th District. *Dintelwan v. Granite City Steel Co.* (5th Dist. 1976), 35 Ill. App. 3d 509; see also *Carey v. Coca-Cola Bottling Co.* (2nd Dist. 1977), 48 Ill. App. 3d 482; *Winkler v. Hyster Company* (4th Dist. 1977), 54 Ill. App. 3d 282; *McCarty v. City of Marshall* (4th Dist. 1977), 51 Ill. App. 3d 842; *Rosales v. Allsteel Press Co.* (1st Dist.

1976), 41 Ill. App. 3d 787; *Sago v. Amax Aluminum Mill Products Inc.* (1st Dist. 1978), 67 Ill. App. 3d 270. The doctrine did receive some viability from the Supreme Court in *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, under a very distinguishable set of facts dealing with subcontractors with no liability insurance. The Courts have interpreted this decision as a bar for immediate employees. See *McCarty v. City of Marshall, supra,* at 844. The latest Supreme Court decision found is *Smith v. Metropolitan Sanitary District of Greater Chicago et al.* (1979), 77 Ill. 2d 313, 396 N.E.2d 524. In reversing the granting of a motion for summary judgment the Court felt that it was a factual question as to whether an employee of a joint venture could sue a member of a joint venture who was also a lessor of equipment to the joint venture when such equipment was alleged to be defective.

It is noted, by way of reconciliation of all of the above cases, that the only cases allowing recovery under the doctrine deal with parallel statutory obligations, e.g., the Scaffolding Act. It is further noted that this parallel statutory obligation must be coupled with a showing of a distinct legal entity, (partnership—ownership—employee, *Marcus v. Green, supra;* lessor—employer, *Smith v. Metropolitan Sanitary District, supra*). The Courts in Illinois have universally rejected products liability causes of action on equipment of employers. This also includes allegations of negligence and willful and wanton misconduct. *Rosales v. Allsteel Press Co., supra,* states as follows:

Nor does the allegation that the defendant's action in modifying the safety control was willful and wanton and in direct violation of the Federal Occupational Safety and Health Act help plaintiff. An action whether grounded on negligence or willful and wanton misconduct is still a common law action. The Legislature imposed no qualification, limitation or exception in Section 5(a) on the prohibition of common law actions against the employer.

The Supreme Court in *Smith, supra,* further cites Professor Larson, Workmen's Compensation with ap-

proval at 77 Ill. 2d 313, 318-19, 396 N.E.2d 524, 527, as follows:

"... (T)he decisive test in applying the dual capacity doctrine 'is not concerned with how separate or different the second function of the employer is from the first, but with whether the second function generates obligations unrelated to those flowing from the first. ...' A mere separate theory of liability against the same legal person as the employer is not a true basis for use of the dual capacity doctrine; the doctrine instead requires a distinct separate legal persona."

Taking the above discussion, it remains to apply it to the present complaints. The complaints are identical with the exception of a count for wrongful death filed on behalf of the decedent plaintiffs by their legal representatives.

Counts I, II, and IV are based on negligence, either for breach of a standard of care or statutory duty. Count III is an allegation of willful and wanton intentional disregard. We find no allegations in any of these counts which would remove the State from its ordinary status of employer. This regrettable incident is clearly within this type of hazardous employment. The State is charged with the care, custody, and supervision of prisoners in its penal institutions. To this end it employs persons such as the Claimants to carry out this purpose and function. There is always the possibility during the course of this employment and function that inmates may be dangerous and situations may deteriorate to riot and anarchy. The decisions of discipline, reason, or course of action to remedy or prevent these situations are vested in the employer. To say that the State owns the prison and therefore has a separate duty does not square with the law. If that theory was followed, every employer who owned the premises in which the employee was injured would be subject to multiple suits.

Count V, dealing with an alleged violation of Ill. Rev. Stat. 1977, ch. 23, par. 4041, merits separate discussion. The duty imposed upon the State to protect the public by

this statute is used by Claimants to support a further theory of recovery. The argument is that once the riot developed, the inmates were "at liberty." This allegedly imposed additional duties upon the State which should allow recovery under the statute. The theory is novel and there are no cases directly on point. The elements needed for recovery, however, were set forth by this Court in *Fuller v. State of Illinois* (1967), 26 Ill. Ct. Cl. 14:

"... (T)he elements which must be ascertained before a recovery is awarded to Claimant are: (1) that an inmate escaped from an institution over which the State had control; (2) that the inmate caused the damage claimed *while he was at liberty after his escape*; .... (emphasis supplied) *Supra* at 15."

Thus we have heretofore determined that the remedy is available only to citizens outside the confines of a penal institution. It would be inconsistent for the Legislature to have intended to confer additional causes of action upon the very employees who are charged with the duty of preventing escape.

Although the Court regrets this tragic and senseless incident, we find that the Court of Claims lacks jurisdiction to determine these claims. It is hereby ordered that the motion of Respondent for involuntary dismissal be and is hereby granted as to all counts of the complaints.