ORA HYMAN, Special Adm'r of the Estate of Eric Hyman, Deceased, Plaintiff-Appellant, v. SIPI METALS CORPORATION, Defendant-Appellee.

First District (4th Division)   No. 86—0501

Opinion filed May 14, 1987.

Michael W. Schaefer, of Chicago, for appellant.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Robert C. Lamont, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Ora Hyman, administratrix of the estate of Eric Hyman, appeals from the dismissal of her three-count complaint against defendant, Sipi Metals Corporation (Sipi), the employer of the deceased. Eric Hyman was fatally injured when a furnace located in his workplace exploded. On behalf of his estate, Ora Hyman (hereinafter Hyman) seeks damages against Sipi under theories of products liability and negligent maintenance of the workplace.

The trial court granted Sipi's motion to dismiss, finding that the action was barred by the exclusive remedy provision of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(a)). On

appeal, Hyman contends that Sipi occupied capacities other than that of employer of the deceased and therefore is liable to his estate, as a manufacturer of a defective and dangerous product and as a landowner who failed to properly maintain the property.

After careful analysis of the relevant law, we affirm the trial court.

The facts are simple and uncontested. On August 18, 1983, the deceased was working at 1720 North Elston, Chicago, a metal fabricating business owned by Sipi. The corporation's business includes the manufacture and distribution of kilns and furnaces to the general public. Located on the premises was a furnace or smelter which exploded, causing Eric Hyman's death.

Thereafter, Hyman was appointed administratrix of her son's estate and filed the pending action. She alleges, in count I of the complaint, that Sipi defectively manufactured the exploded smelter, in that it was of inadequate strength and thickness to withstand the pressures of the collected fumes and gases, and that this was the proximate cause of the death of her son. Count II specifies certain alleged deficiencies in the design of the smelter, such as the lack of safety devices and warnings, and claims that these design defects were the proximate cause of the death. In count III, Hyman bases a negligence claim on the alleged failure of Sipi, as owner and operator of the premises, to maintain adequate safeguards, warnings, and other safety measures at the plant.

The motion court heard oral argument on Sipi's motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) and concluded that the action was barred by the exclusive remedy provision of the Act because Hyman could not establish a dual capacity of Sipi, as a matter of law.

OPINION

■■ This is another in a line of cases that attempts to find meaning in what is commonly called the dual capacity doctrine. Since the 1973 decision in *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512, the first case to apply the doctrine in Illinois, much uncertainty in its application has resulted. The Fourth District Appellate Court in *Marcus v. Green* defined dual capacity in the employment situation as an employer's occupying, in addition to his capacity as an employer, " 'a second capacity that confers upon him obligations, independent of those imposed upon him as employer.' " (13 Ill. App. 3d 699, 706, 300 N.E.2d 512, 517, quoting 2A A. Larson, Workmen's

Compensation sec. 72.80, at 1.226.20 (1976).) The court held that the employer in *Marcus v. Green* was also an owner of the land upon which the injury occurred and therefore was occupying a second legal capacity apart from that of employer.

Ten years after the *Marcus v. Green* decision the First District Appellate Court found that the Illinois Supreme Court had shifted the focus of the doctrine from whether the employer occupied a second, independent role, to "an exclusive concern" with whether the controversy involved separate legal entities. *Toth v. Westinghouse Elevator Co.* (1983), 114 Ill. App. 3d 905, 908, 449 N.E.2d 1005, 1007.

A study of the decisions of both the appellate and supreme courts during the decade between 1973 and 1983, as well as a very recent appellate opinion, leads us to believe that the "dual capacity" doctrine has in fact evolved into what could be more accurately termed the "dual entity" doctrine.

Cases following in the wake of *Marcus v. Green* declined to follow its reasoning by distinguishing the case as being an employee's action against a separate and distinct legal entity in which the employer had an ownership interest rather than against the employer *per se*. See *Dintelman v. Granite City Steel Co.* (1976), 35 Ill. App. 3d 509, 341 N.E.2d 425 (employer was both the owner and employer, but as a single legal entity, no dual capacity was found); *Profilet v. Falconite* (1977), 56 Ill. App. 3d 168, 371 N.E.2d 1069 (since defendant-employer was same legal entity as lessor of allegedly defective product, no strict liability action could be maintained); *Rosales v. Verson Allsteel Press Co.* (1976), 41 Ill. App. 3d 787, 354 N.E.2d 553.

In *Rosales*, the plaintiff was injured on a punch press that the employer had modified by removing a safety control. The majority opinion refused to find that the employer had thereby became a quasi-manufacturer and held that the mere furnishing of tools for use in the workplace did not constitute a second capacity of the employer. Justice Simon, dissenting, noted that strict liability principles are intended to protect all users of defective products, regardless of their relationship to the manufacturer, and that the coincidental status of a manufacturer as employer should not obviate this protection. *Rosales v. Verson Allsteel Press Co.* (1976), 41 Ill. App. 3d 787, 796, 354 N.E.2d 553, 560 (Simon, J., dissenting).

In *Sago v. Amax Aluminum Mill Products, Inc.* (1978), 67 Ill. App. 3d 271, 385 N.E.2d 17, the court acknowledged *Marcus v. Green* as originating the dual capacity doctrine in Illinois but noted that subsequent cases had limited it to its facts and found that the case actually involved a suit against a separate legal entity. Having distin-

guished *Marcus v. Green*, the *Sago* court failed to offer any suggestion of what second or dual capacity an employer could have without also being a separate legal entity. The court concluded that the plaintiff in the case before it could not recover from his employer in strict liability when his hand was crushed in a machine that the employer manufactured and sold to the public. In so doing, the court was following such precedents as *Profilet v. Falconite* and *Rosales v. Verson Allsteel Press Co.*, decisions which virtually assured that a products liability theory would not be actionable if it occurred in the workplace, since the employee would not have been injured "but for" his employment.[1] *Sago v. Amax Aluminum Mill Products, Inc.* (1978), 67 Ill. App. 3d 271, 274, 385 N.E.2d 17, 19.

In 1979 the Illinois Supreme Court recognized for the first time the dual capacity doctrine, as defined in Professor Larson's treatise, and cited the *Marcus v. Green* case with approval. (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524.) No mention was made of the other appellate court cases that had considered (and rejected) the application of the dual capacity doctrine.

The plaintiff in *Smith* was employed by a joint venture consisting of two corporations. One corporation leased a truck, which struck and injured the employee, to the joint venture. Plaintiff, in three counts, sued the joint venturer who had leased the truck: negligence, Structural Work Act, and strict liability as lessor of the allegedly defective truck.

After reviewing the rationale of the worker's compensation exclusive remedy provision and the dual capacity exception, the supreme court held that the negligence and Structural Work Act counts were barred because the joint venturer was simply an agent of the principal (employer) but that the products liability count could stand because the lessor of a defective product is held to the same standard as a manufacturer and the plaintiff's right to recover under this theory "should not depend upon whether the truck which struck him was leased to his employer by one of its members or by a lessor with no other relationship to the joint-venture employer. Likewise, *** defendant's liability as a lessor of equipment should not be dependent upon whether it was solely a lessor or occupied the coincidental status of a member of the joint venture." 77 Ill. 2d 313, 320, 396 N.E.2d 524, 528.

---

[1]Under this rationale it is difficult to envision a secondary capacity an employer could hold that would be sufficiently distinct to impose liability; *any* injury in the workplace, during an employee's working hours, would not have occurred "but for" his employment.

There is nothing in the *Smith* opinion to indicate that the existence of a separate legal entity is required before the dual capacity doctrine might be invoked. On the contrary, the court acknowledged that the joint venturer was a member and agent of the joint venture-employer. There was no question but that the accident occurred in the workplace during the employment of the plaintiff. The court was clearly concerned with the manufacturer status or capacity that the employer maintained in addition to that of employer and found liability on that basis,[2] rather than upon the "coincidental" existence of separate legal entities.

Two years after the *Smith* decision the Illinois Supreme Court refused to extend the dual capacity doctrine to an employer who provided medical treatment to an employee following a work-related injury. (*McCormick v. Caterpillar Tractor Co.* (1981), 85 Ill. 2d 352, 423 N.E.2d 876.) The basis of the claim was that the company doctors who treated the employee committed malpractice and that they had obligations that were separate and distinct from the capacity of the corporation as employer.

Finding that the Workers' Compensation Act required employers to provide and pay for medical services caused by the injury, the court reasoned that the corporation was meeting this obligation and therefore was within the protection of the Act. In a lengthy dissent, however, Justice Simon exposed what he perceived as analytical flaws in the majority opinion and questioned what appeared to be a retreat from the *Smith* case, noting, "A victim should not be barred because the 'third party' tortfeasor happen[s] to be the employer." 85 Ill. 2d 352, 367, 423 N.E.2d 876, 882.

Significantly, neither the *Smith* nor *McCormick* cases addressed the notion that a separate legal entity was a prerequisite to maintaining a suit under the dual capacity doctrine.

The Illinois Supreme Court made its most recent pronouncement of the dual capacity doctrine in *Sharp v. Gallagher* (1983), 95 Ill. 2d

---

[2]Professor Larson's treatise, which the *Smith* court relied on, does note that "[a] mere separate theory of liability against the same legal person as the employer is not a true basis for use of the dual capacity doctrine; the doctrine, instead, requires a distinct separate legal *persona*." (77 Ill. 2d 313, 319, 396 N.E.2d 524, 527, citing 2A A. Larson, Workmen's Compensation sec. 72.80, at 14-17 (1976).) It would seem that the *Smith* court was recognizing that the joint venture partner who leased the truck was a separate legal *persona* for strict liability purposes, even though it was not for purposes of the negligence and Structural Work Act counts. It is thus unclear whether *persona* is to be considered interchangeable with "entity."

322, 447 N.E.2d 786. Reversing the appellate court, the Illinois Supreme Court rejected an argument that an employer should be held liable as a landowner for injuries sustained on the premises. The court ruled that there was no dual capacity on the part of the employer as landowner since the employer and landowner were the *same legal entity*. The court distinguished *Smith* and *Marcus v. Green* on the basis that the employers in those cases were acting as separate legal entities.

In *Toth v. Westinghouse Elevator Co.* (1983), 114 Ill. App. 3d 905, 449 N.E.2d 1005, the appellate court affirmed the dismissal of a strict liability action brought by an employee who was injured while repairing an elevator on the premises of his employer. The court noted that the "parameters" of the dual capacity doctrine had "been recently modified" by *Sharp v. Gallagher*, which changed "the analytical vortex of the doctrine." (114 Ill. App. 3d 905, 907-08, 449 N.E.2d 1005, 1006-07.) According to the *Toth* court, this modification was a shift from whether the employer occupied a second, independent role, to "an exclusive concern" with whether the controversy involved separate legal entities or *persona*. 114 Ill. App. 3d 905, 908, 449 N.E.2d 1005, 1007.

Most recently, this court has considered the dual capacity question in the context of a wrongful death action arising out of an airplane crash. In *Ocasek v. Krass* (1987), 153 Ill. App. 3d 215, the representative of a wife's estate sued the husband's estate for damages based on the fact that he was piloting the airplane when it crashed. The plaintiff's husband was also her employer, however, and the two were on a business trip.

Declining to find that the dual capacity doctrine applied to the husband as a pilot, we enunciated a two-part test based on the holdings of *Smith v. Metropolitan Sanitary District* and *Sharp v. Gallagher*. This test requires (1) a second capacity of the employer which generates obligations unrelated to those flowing from the first, that of employer, and (2) a second, distinct legal *persona* of the employer. Neither was met in that case.

We can infer, from the foregoing cases, that the dual capacity concept as it was explained by Professor Larson has been virtually eliminated in Illinois in favor of the dual entity concept. Moreover, we note that the fulfillment of the *Ocasek* two-part test creates a "third party" defendant, as a matter of law, even if the employer has some connection with the second entity. This is in no way inconsistent with the exclusive remedy provision of the Act and is not in fact an exception to it, as the dual capacity doctrine has been

viewed.[3]

■ The legislature's decision to make the worker's compensation remedy exclusive as against the employer was based on the perceived desirability of creating a system of liability without fault that would abrogate the employer's defenses while requiring the employee to give up certain elements of damage recoverable in common law actions. (See *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1958), 13 Ill. 2d 460, 150 N.E.2d 141.) As might be expected, therefore, the Act contains no exceptions to the exclusive remedy provision. It would appear, indeed, that none were intended. Since the Act applies to employers only, and an employee retains his right to sue any potentially liable third parties, any separate legal entity who may have a legal duty to the employee, outside of the employment context, is by definition a third party. Thus, an employer who is also a partner or shareholder in a separate business venture may be subject to additional liability if the separate entity is the owner of the land upon which the employee is injured (*Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512) or is the manufacturer of a defective product that causes the injury (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524). In light of *Sharp v. Gallagher*, the primary focus of the inquiry must be the separateness of the entities involved in the controversy, as *Toth v. Westinghouse Elevator Co.* and *Ocasek v. Krass* have held.[4]

In the pending case, the employer, Sipi, is the same legal entity as the manufacturer of the furnace and owner of the premises. Sipi undoubtedly occupies a second and even third "capacity" from that of employer; however, meaningful application of the Act renders these other roles of an employer irrelevant precisely because of the exclusive remedy provision. Nevertheless, the protective cloak of the

---

[3]Whether this retreat from *Smith* is desirable, especially in the products liability context, is another question. However, what the Illinois Supreme Court gives, it can take away, and *Sharp v. Gallagher* is, of course, controlling.

[4]One unresolved question is the extent to which a partner or joint venturer who is also a member of the employer entity may be held liable as a true third party. *Smith* implies that a joint venturer is a third party for purposes of a products liability action but not for common law negligence or a Structural Work Act theory. This may reflect the concern that "normal" workplace risks or conditions be included in the exclusive remedy provision, while a non-work-related hazard, such as an unreasonably dangerous product, be compensable under products liability principles. The *Ocasek* two-part test is consistent with this reasoning. See generally Comment, *The Blood of the Workman: Allowing a Dual Recovery for an Employee Injured by His Employer's Defective Product*, 23 Hous. L. Rev. 945 (1986).

Act does not cover the employer who is also a third party in the sense of having membership in or ownership of a separate legal entity which is also liable to the injured party.

Accordingly, we hold that Hyman's action is barred, as a matter of law, because Sipi as manufacturer and landowner is the same legal entity as Sipi the employer.

For the foregoing reasons, we affirm the order of the trial court that dismissed Hyman's complaint.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.