# National Surety Co. v. T. B. Townsend Brick and Contracting Co.

1. EVIDENCE—*Estimates of the Cost of Work Performed Under the Provisions of a Contract.*—Upon the failure of a subcontractor to complete certain work contracted to be done by him, the principal contractor finished the work and brought suit for damages. The trial court admitted evidence of estimates made by the witnesses of the costs and expenses of such work, and rendered judgment against the subcontractor. On appeal, it was contended that the principal contractor should have kept a strict account of all work and expenditures under the incompleted contract, and that the trial court erred in admitting estimates. *Held,* that the ultimate fact to be ascertained was the actual work done and materials furnished and their reasonable cost and expense, and that any evidence tending to show this was proper to be admitted and considered, including that objected to.

2. PARTNERSHIP—*Participation in Profits and Losses Not Conclusive Proof of.*—Participation in the profits and losses of a particular business is not a conclusive test of partnership, if it shall appear the parties stood in some other relation to each other, or if their intention was not to form a partnership relation.

Debt, on a bond. Error to the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the December term, 1897. Affirmed. Opinion filed February 28, 1898.

JACK & TICHENOR, attorneys for plaintiff in error.

PAGE, WEAD & ROSS, attorneys for defendant in error.

MR. JUSTICE WRIGHT DELIVERED THE OPINION OF THE COURT.

Plaintiff in error became the surety in the sum of $10,000 to the defendant in error, for Sinclair & Co., for the performance of a subcontract made by the latter with the defendant in error to do a part of the work on certain public improvements in the city of Peoria, designated as the West Bluff Sewer System, for the construction of which the defendant in error had previously entered into a contract with the city. By the terms of the subcontract Sinclair & Co. were also to purchase of defendant in error

brick and other material necessary to construct the part of the sewer undertaken by them, at prices stipulated in the contract. Sinclair & Co. entered upon the performance of their contract, but soon after abandoned further work; whereupon defendant in error notified plaintiff in error that unless it or Sinclair & Co. would resume and fulfill the sub-contract, it would be held liable under the terms of its suretyship for such damages as might result from such failure; and later, in writing, gave further notice that it would proceed to do the work, keep a strict account of the cost, and require plaintiff in error to pay such damages as they might sustain on account of the non-fulfillment of the contract of Sinclair & Co. Neither Sinclair & Co. nor plaintiff in error resumed the work prescribed in the contract, and defendant in error undertook and finished it, in connection with the residue of the work of the system included in its contract with the city, and thereafter commenced this suit to recover damages.

In the performance of the work on the whole system no complete separate account was kept by defendant in error of the cost of the work covered by the Sinclair & Co. contract, many of the items being blended with other portions of the work on the general improvement, presumably because of the inconvenience or, may be, impossibility of separating the particular from the general work. Previous to making the contract with Sinclair & Co., and after the contract with the city, defendant in error made an agreement with Adams Bros., by which the latter were to work on the improvements, and receive one-half the profits and share one-half the losses. Plaintiff in error was not informed, or did not know of this agreement before or at the time it became surety for Sinclair & Co. Adams Bros. worked on that portion of the improvements included in the incompleted contract, as well as the general system. A jury having been waived, the trial was by the court, resulting in a finding and judgment against plaintiff in error for $9,718, to reverse which this writ of error is prosecuted.

Several errors have been assigned, those chiefly urged by

counsel being, the finding and judgment are against the evidence, and the contract with Adams Bros. created a partnership between the latter and the defendant in error, and thereby rendered the bond invalid because of concealed parties to the contract.

Under the first head, it is urged by counsel, the defendant in error should have kept a strict account of all work and expenditures under the incompleted Sinclair contract, and that the court erred in permitting, as it did, evidence of estimates made by the witnesses of the costs and expenses of such work. We have examined the undertaking of the plaintiff in error, and find no provision in the contract requiring such accounts to be kept. It may be counsel do not strongly insist upon an express stipulation of that nature, but that the contract should be so construed, or the defendant in error should be held to its promise contained in the written notice addressed to plaintiff in error, that it would keep such accounts. We can not so construe the contract; and neither do we think the promise contained in the notice of the binding nature of a contract, for it can not be maintained there was a consideration for it. Besides the plaintiff in error, according to the legal effect of its contract, itself had the right to do the work, or failing in that, the right of a qualified superintendence to the extent of knowing the nature and cost of the work done, while in its progress, and thereby have been personally enabled to have kept the account. Although notified, it manifested, by its silence and inaction, an indifference in this respect, until defendant in error by its own contract with the city, was compelled to act for its own protection. Whether an account, such as contended for, had been kept, either by the one or the other of the parties, or both, as an evidential element, it would have been inconclusive in its nature, for it could have been disputed by either party to the suit, and the same kind of evidence to which objection is now urged would have been admissible in furtherance of such dispute. The ultimate fact to be ascertained was the actual work done and materials furnished and their reasonable cost and expense, and any

evidence tending to show this was proper to be admitted and considered. Nor can we say the trial judge was wrong in his conclusions upon the whole evidence, which we think fairly sustains the finding, and the amount of damages assessed.

The only remaining question for this court to determine is whether the agreement by defendant in error with Adams Bros., made before the contract with Sinclair & Co., by which they were to receive one-half the profits and share one-half the losses under the contract with the city, and the failure of the defendant in error to inform the plaintiff in error of such fact, previous to its undertaking of suretyship, results in the invalidity of the bond.

Counsel for plaintiff in error earnestly argue the agreement constituted Adams Bros. partners with the defendant in error, and creates in them an interest as such, and that therefore it was the right of plaintiff in error, before it entered into the contract, to know the parties thereto, and that a concealment of this fact had the effect to make Adams Bros. partners to the contract, when discovered. We do not agree with this contention, notwithstanding the plausibility with which counsel have presented it. From a careful consideration of the evidence upon this point, we have reached the conclusion the agreement with Adams Bros. did not create a partnership; no partnership was intended; they were merely the employes of the defendant in error, and their sharing the profits and losses was a mere measure of compensation for the work to be done; the facts and circumstances in evidence repel every other inference.

Participation in the profits and losses of a particular business is not a conclusive test of partnership, if it shall appear the parties stood in some other relation to each other, or if their intention was not to form a partnership relation. Whether a partnership exists is a question of fact; what a partnership is, is a question of law. There may be a partnership as to third persons, though the parties are not partners *inter se*. In such cases, however, the principle of estoppel has been usually invoked to prevent injustice to such third persons. Here there is no element of estoppel,

for it can not be said the plaintiff was in any way misled, or defrauded, at the time it entered into the undertaking of suretyship with defendant in error, by reason of the fact that Adams Bros. were to share in the profits and losses of the enterprise, a fact unknown to it when the contract was made and in no way prejudicial to it afterward. No injustice resulted to it, either by that fact or its concealment.

In Niehoff v. Dudley, 40 Ill. 406, it is said: " As a general rule, when the agreement provides for a division of the profits simply, the law will infer a partnership, but even then the first and controlling element is the intention of the parties between themselves. If, from the agreement, anything appears which repels the inference of such intention, then as between the parties they are not such partners. The rule, however, is different as to third persons, for in that case the general rule is that participation in the profits renders them partners. There is no absolute rule of law that a participation in the profits renders the participant a partner. It is only a presumption of the law, which prevails in the absence of controlling circumstances, but is controlled by them. This seems to be the extent of the rule announced by the authorities. And there is no hardship on third persons where the party does not hold himself out as a partner. The rule as to the intention of the parties between themselves does not, however, prevail as to third persons, when they have held themselves out to the world as partners. In such a case they are estopped from denying the existence of a partnership. And for the obvious reason, that if it should be permitted, it would result in a fraud and wrong to persons dealing with them on the supposition that they were partners. By holding themselves out as partners, third persons are induced to extend them credit on the supposition that they are bound by the contracts of the firm."

It is said by Chancellor Kent, Vol. III, p. 33, that "a person may be allowed in special cases to receive a part of the profits of a business, without becoming a legal or responsible partner, as, by agreement, he may, by way of rent,

receive a portion of the profits of a farm or tavern without becoming a partner. So a clerk or agent may be allowed a portion of the profits on sales, as a compensation for labor, or a factor, a percentage on sales, without becoming a partner, when it appears to be intended merely as a mode of payment, adopted to secure increased exertion, and it is not understood to be an interest in the profits, in that character of profits. So seamen may take a share, by agreement with the ship owners, in the profits of a whole fishery, or coasting voyage, as compensation for their services, and shipments from this country to India upon half profits are usual; and the responsibility of partners has never been supposed to flow from such special agreements."

In Snell v. DeLand, 43 Ill. 323, where A and B as partners, and C and D as partners, composing distinct firms, made a contract with E to furnish him a certain quantity of wool, and agreed among themselves to share profit and loss in the speculation, each person to furnish a certain proportion of the wool, it was held, that as to such transaction they could not be considered partners between themselves or as to third persons.

It conclusively follows, from the authorities quoted, that Adams Bros. were not partners with the defendant in error in the contract with the city, or otherwise, and therefore had no interest as such in the contract with Sinclair & Company, for which the plaintiff in error was surety.

Finding no error in the proceedings and judgment of the Circuit Court, the latter will be affirmed.