FRANCIS J. SAVARIRAYAN, Plaintiff-Appellant, *v.* HARLAN ENGLISH *et al.,* Defendants-Appellees.

Fourth District   No. 13600

Opinion filed January 20, 1977.

Manion, Janov and Edgar, Ltd., of Hoopeston (Alexander L. Edgar, of counsel), for appellant.

Henry A. Schwarz, United States Attorney, of East St. Louis (Warren E. White, Assistant United States Attorney, of counsel), for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

No reviewing court in Illinois has apparently been called upon before to rule on the issue presented here. Quaere: Can federally employed medical specialists make slanderous or libelous statements about a colleague's professional capacity with immunity from common law liability?

The short answer: Yes, under the circumstances in the case at bar. Now to the long answer.

The undisputed facts unfold as follows. Dr. English and Dr. Taylor were both practicing urologists in Danville and had served as consulting urologists to the Veterans Administration Hospital in that city on a

contractual basis for a number of years—English for 11 years, and Taylor for 19. Part of their duties as consulting urologists was to evaluate the quality of medical service being rendered by the urology section at that institution. On August 19, 1973, the appellant, Dr. Savarirayan, came to the Veterans Hospital and commenced his duties as Chief of the Urology Section.

During the ensuing six months numerous complaints were made about appellant's capabilities and the consulting urologists reported to the Chief of Staff, Dr. Kannapel, of Dr. Savarirayan's lack of professional competence, his inability to work in harmony with hospital personnel, to communicate with patients, and to supervise other doctors. Further, they complained that the appellant was incompetent as a specialist in urology, was too slow in surgery, was unable to perform major surgery and was incapable of performing surgery without assistance of other doctors.

In February 1974, Dr. Kannapel issued written instructions to the appellant not to perform major urological surgery without a urological consultant attending. And in July 1974, the Chief of Staff counseled with Dr. Savarirayan and informed him that he would be discharged unless there was "significant improvement in his professional performance." Also during this period, the Urology Department of Rush-Presbyterian-St. Luke's Medical Center in Chicago advised the Chief of Staff, Dr. Kannapel, that appellant's professional performance was substandard and unless it improved the residency program in urology with the Danville VA Hospital would be discontinued.

On January 31, 1975, Dr. Savarirayan resigned and thereafter brought this suit for damages charging that the libelous and slanderous statements of Drs. English and Taylor humiliated him, undermined his professional standing and forced him to resign his position. Dr. Savarirayan further alleged that personal malice prompted them to defame him.

The trial court judge took the case on a motion to dismiss, supported by uncontroverted affidavits, heard extensive arguments, granted the motion and struck the case. This appeal was the result.

■■ It is well settled that the issue of immunity of Federal officials acting in the course of their employment is governed by Federal law. "At the outset," said the U. S. Supreme Court in *Howard v. Lyons* (1959), 360 U.S. 593, 597, 3 L. Ed. 2d 1454, 1457, 79 S. Ct. 1331, in squarely facing this question,

> "* * * The authority of a federal officer to act derives from federal sources, and the rule which recognizes a privilege under appropriate circumstances as to statements made in the course of duty is one designed to promote the effective functioning of the Federal Government. No subject could be one of more peculiarly federal concern, and it would deny the very considerations which

give the rule of privilege its being to leave determination of its extent to the vagaries of the laws of the several States. Cf. Clearfield Trust Co. v. United States, 318 U.S. 363, 87 L. Ed. 838, 63 S. Ct. 573. We hold that the validity of petitioner's claim of absolute privilege must be judged by federal standards, to be formulated by the courts in the absence of legislative action by Congress."

■■ The doctrine of absolute immunity surrounding Federal officials was reconfirmed and clearly delineated in *Barr v. Matteo* (1959), 360 U.S. 564, 3 L. Ed. 2d 1434, 79 S. Ct. 1335. In that case the acting director of the Office of Rent Stabilization issued a press release indicating his intention to suspend the respondents because of the part they played in a plan to utilize certain agency funds. Respondents claimed the release to be libelous and sued. The verdict in their favor was reversed and in so doing the court said:

"That petitioner was not *required* [emphasis in original] by law or by direction of his superiors to speak out cannot be controlling in the case of an official of policy-making rank, for the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority.

The fact that the action here taken was *within the outer perimeter of petitioner's line of duty* [emphasis added] is enough to render the privilege applicable, despite the allegations of malice in the complaint * * *." 360 U.S. 564, 575, 3 L. Ed. 2d 1434, 1443, 79 S. Ct. 1335.

In conclusion, the court's rationale was this:

"We are told that we should forbear from sanctioning any such rule of absolute privilege lest it open the door to wholesale oppression and abuses on the part of unscrupulous government officials. It is perhaps enough to say that fears of this sort have not been realized within the wide area of government where a judicially formulated absolute privilege of broad scope has long existed. It seems to us wholly chimerical to suggest that what hangs in the balance here is the maintenance of high standards of conduct among those in the public service. To be sure, as with any rule of law which attempts to reconcile fundamentally antagonistic social policies, there may be occasional instances of actual injustice which will go unredressed, but we think that price a necessary one to pay for the greater good. And there are of course other sanctions than civil tort suits available to deter the executive official who may

be prone to exercise his functions in an unworthy and irresponsible manner. We think that we should not be deterred from establishing the rule which we announce today by any such remote forebodings." 360 U.S. 564, 576, 3 L. Ed. 2d 1434, 1444, 79 S. Ct. 1335.

■■ Numerous Federal cases have held defamatory statements, reports, news releases and other documents to be within the outer perimeter of duty and thus immune from suit; *Ruderer v. Meyer* (8th Cir. 1969), 413 F.2d 175; *Pagano v. Martin* (4th Cir. 1968), 397 F.2d 620; *West v. Garrett* (5th Cir. 1968), 392 F.2d 543; *Le Burkien v. Notti* (7th Cir. 1966), 365 F.2d 143; *Chavez v. Kelly* (10th Cir. 1966), 364 F.2d 113; *Chafin v. Pratt* (5th Cir. 1966), 358 F.2d 349, 352-354; *Keiser v. Hartman* (3d Cir. 1964), 339 F.2d 597; *Preble v. Johnson* (10th Cir. 1960), 275 F.2d 275.

Nor can the allegation that malice motivated the charges of professional incompetency act as a deterrent to the application of the immunity doctrine, or as an exception to the rule. The decision in *Barr* cited *Spalding v. Vilas* (1895), 161 U. S. 483, 498-499, 40 L. Ed. 780, 16 S. Ct. 631, and quoted extensively from that opinion which emphatically sustained a defense of "absolute privilege" where malice was alleged to be the cause:

" 'In exercising the functions of his office, the head of an Executive Department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of the government, if he were subjected to any such restraint. He may have legal authority to act, but he may have such large discretion in the premises that it will not always be his absolute duty to exercise the authority with which he is invested. But if he acts, having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals.' " 360 U.S. 564, 570, 3 L. Ed. 2d 1434, 1440-41, 79 S. Ct. 1335.

■■ We would note in passing that appellant attempts to distinguish between a full-time Federal employee and the appellees in their roles as consultants serving in a contractual capacity. When we are dealing here with professional experts in the medical and health care arena, we must confess that any distinction for the purpose at bar totally escapes us. Whether Drs. English and Taylor were full time or part-time, salaried or contractual, seems wholly immaterial—it was the utilization of their

professional expertise and medical talents which was significant, not the hours punched in and out on the timeclock at the admissions desk or in the scrub room.

Even assuming, *arguendo*, that a Federal official's actions could be characterized as so patently gross and reprehensible as to transcend or hurdle "the outer perimeter of * * * line of duty" established in *Barr*, can it be said that such obstacle has been overcome here? We think not.

First of all, the court in *Barr*, "expressly rejected a rigid scope of duty, as literally prescribed by rule or regulation, in favor of a more generalized concept of line of duty." *Preble v. Johnson* (10th Cir. 1960), 275 F.2d 275, 278.

■■ Secondly, under either criterion—rigid or flexible—the appellees' conduct of which appellant complains was clearly within their respective "line of duty." The medical health and well-being of patients was at stake; the Chief of Staff was entrusted with the medical welfare of all the VA charges at the Danville hospital; Drs. English and Taylor were consulting urologists of many years experience and service to the hospital; they were recognized specialists in their field, and uniquely qualified to observe and evaluate the quality of Dr. Savarirayan's medical service; the Chief of Staff had received alarming complaints about Dr. Savarirayan's service and requested Drs. English and Taylor for their evaluation of appellant's medical capabilities; their responses, negative to appellant, were in writing and can be equated to intraoffice communications. Clearly a matter of the most serious public policy: public health and competent medical facilities—areas unquestionably within the contractual concern and professional "line of duty" of both appellees.

Furthermore, from a purely pragmatic standpoint, were not this "doctrine of absolute immunity" a viable and applicable rule of law, no official—full time or part, salaried or contractual—would ever feel secure or protected in lodging complaints, however justified, about others within the system whose competency or level of performance was clearly subject to question. And if no negative or adverse reports could ever be presented in the assurance that protection was afforded, no such reports would be made, incompetency could well run rampant and the purpose of representative government—public service—could be successfully thwarted and undermined. In the final analysis, it is a question of good to the general public and the balancing of interests. The importance of furthering public health and providing excellence in medical care must surpass the possible loss to the individual, and the doctrine of governmental immunity is merely a means of assuring that end.

■■■ Finally, appellees' motion to dismiss was supported by several affidavits, but appellant filed no counteraffidavits nor presented any evidence at the hearing. It is well settled that failure to challenge such

affidavits constitutes an admission of the facts set forth, although not conclusions. (*Suing v. Catton* (1970), 118 Ill. App. 2d 468, 470, 254 N.E.2d 806.) We have read the supporting affidavits, and although they contain examples of both fact and conclusion there is ample factual recitation set forth to satisfactorily buttress a dispositive motion to dismiss and warrant the trial judge's final order dismissing this action. Since appellant failed to challenge the affidavits below, the question of their sufficiency is moot, for such matter may not be raised for the first time on appeal. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

Affirmed.

GREEN, P. J., and REARDON, J., concur.