MAX D. McCORMICK, Plaintiff-Appellant, *v.* CATERPILLAR TRACTOR CO. *et al.*, Defendants-Appellees.—MAX D. McCORMICK, Plaintiff-Appellant, *v.* M. T. NEU, M. D., Defendant-Appellee.

Fourth District   No. 15762

Opinion filed March 20, 1980.—Rehearing denied April 16, 1980.

WEBBER, J., concurring in part and dissenting in part.

Jerome Mirza & Associates, Ltd., of Bloomington, for appellant.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Wayne L. Hanold and Jeffrey W. Jackson, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

The case concerns two suits brought by an employee covered by the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) against his employer and medical practitioners hired by his employer to recover for malpractice by those practitioners in treating him for an injury compensable under the Act. In question is the application to this situation of the "dual capacity doctrine" recently applied by the supreme court in *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524.

Plaintiff, Max D. McCormick, filed two separate suits in the circuit court of McLean County seeking recovery for medical malpractice in the treatment of injuries received on January 26, 1976. These suits have been consolidated on appeal and as such have Caterpillar Tractor Co. (Caterpillar), M. E. Godby, M.D., L. B. Patalinghug, M.D., and M. T. Neu, M.D., as defendants. Judgments for all defendants have been

entered in both cases, in one upon a motion to dismiss the complaint, in the other pursuant to a motion for summary judgment. This appeal followed.

At the hearings on both motions, it was undisputed that (1) plaintiff had received injuries arising in the course of and out of his employment by defendant Caterpillar, (2) his employment was covered by the Workmen's Compensation Act, (3) he had made claim for workmen's compensation benefits for his injury, (4) the alleged malpractice arose from treatment of that injury, and (5) all individual defendants were employees of defendant Caterpillar. The reason for the ruling was the immunity supposedly arising from section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.5(a)) which provides in part:

> "No common law or statutory right to recover damages from the employer, his insurer, * * * or the agents or employees of any of them for injury * * * sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, * * *."

In *Smith*, a group of contractors formed a joint venture to do certain construction work. An employee of the joint venture was injured and filed claim for workmen's compensation benefits for the injury. He also filed suit at law to recover for these injuries. One of the joint venturers was among the defendants and was charged in separate counts with (1) violations of the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*), (2) ordinary negligence, and (3) strict liability for a defective product. The supreme court ultimately held that section 5(a) barred recovery on the first two theories of liability because the joint venture and the joint venturer were one and the same entity. However, the court concluded that section 5(a) was not a bar to recovery on the strict liability charge which arose from a claimed defect in a vehicle furnished by the joint venturer to the joint venture under a lease. The court distinguished the lease of the vehicle from a situation where the joint venturer might have supplied the vehicle to the joint venture in its capacity as an employer furnishing a tool for the employee's use. Under those circumstances, the court would have held section 5(a) to bar the action, but because of the lease, the court held the joint venturer to have been functioning in a separate capacity as a lessor, not protected by section 5(a) and subject to the strict liability imposed upon lessors of vehicles. *Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 383 N.E.2d 951.

The court explained the rationale for its determination in these words:

> "This theory, known as the 'dual capacity doctrine,' has been

defined in the following terms: '[A]n employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.' (2A A. Larson, Workmen's Compensation sec. 72.80, at 14-112 (1976). See also Kelly, *Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine*, 5 St. Mary's L.J. 818 (1974).) Professor Larson explains that the decisive test in applying the dual capacity doctrine 'is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer.' (2A A. Larson, Workmen's Compensation sec. 72.80, at 14-117 (1976).) A mere separate theory of liability against the same legal person as the employer is not a true basis for use of the dual capacity doctrine; the doctrine, instead, requires a distinct separate legal *persona*. (2A A. Larson, Workmen's Compensation sec. 72.80 (Supp. 1979).) Cited examples showing an employer in a dual capacity include: a shipowner employing stevedores (*Reed v. Steamship Yaka* (1963), 373 U.S. 410, 10 L. Ed. 2d 448, 83 S. Ct. 1349); a landowner employing persons to work on his property (*Marcus v. Green* (1973), 13 Ill. App. 3d 699); and a chiropractor treating his own employee's work-related injuries (*Duprey v. Shane* (1952), 39 Cal. 2d 781, 249 P.2d 8)." *Smith*, 77 Ill. 2d 313, 318-19, 396 N.E.2d 524, 527.

We are unable to satisfactorily distinguish this case from *Duprey v. Shane* which was cited with apparent approval by the supreme court. In both cases (1) the employee was injured under circumstances giving rise to liability for workmen's compensation benefits, (2) the employee sought those benefits, (3) the employer was not required to perform the medical treatment itself or through its employees (see Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a); *Duprey v. Shane* (1952), 39 Cal. 2d 781, 793, 249 P.2d 8, 15) and (4) the employer chose to furnish the medical treatment itself rather than to pay others to do so. We see no significant difference arising because the *Duprey* employer was an individual performing the treatment himself whereas here the employer was a corporation acting through full-time employees. Larson describes the significant factor not to be that the employer takes on a different function (*i.e.*, manufacturing vs. doctoring) but that when the employer performs the treatment directly rather than merely paying the bills, it takes on a different relationship to the employee with different obligations arising. (2A A. Larson, Workmen's Compensation sec. 72.80, at 14—118 (1976).) Thus a doctor-patient

relationship is created between the employer and the employee and the employer takes on a different *persona.*

While in *Reed* and *Marcus,* cited in *Smith,* there was some substantial degree of difference in the capacities in which the defendants had operated as employers and the capacities in which they were held subject to suits at law, the position of the Larson treatise quoted in *Smith* indicates that the degree of difference between capacities is not of great significance. Indeed, in *Duprey* there was no difference because the defendant was giving the same service to the employee that he was in the business of furnishing to the public. The change was in the chiropractor's relationship to his employee.

Although *Duprey* may have been either rejected or deemed different from the case before it by the California intermediate court of review in *Dixon v. Ford Motor Co.* (1975), 53 Cal. App. 3d 499, 125 Cal. Rptr. 872, *Duprey* is cited by both Larson and the supreme court as an example of application of the "dual capacity doctrine." Because of that precedent, we hold that section 5(a) affords no immunity to Caterpillar here.

The situation is different as far as the doctor employees of Caterpillar are concerned. No case has been called to our attention where statutory immunity of coemployees has been abrogated by the "dual capacity doctrine." One purpose of the Workmen's Compensation Act was to relieve employees of the possible financial burden arising from their negligently injuring coemployees (*O'Brien v. Rautenbush* (1956), 10 Ill. 2d 167, 139 N.E.2d 222). We see no indication of intent in *Smith* to deny this immunity merely because an employee might be serving an employer in a capacity different than that of another employee whom he might injure. The immunity of an employee from liability does not keep the conduct of that employee from being wrongful, nor does it prevent responsibility for that conduct from flowing to the employer under the doctrine of *respondeat superior.*

For the reasons stated, we affirm the judgments entered in favor of the individual defendants and reverse the judgment entered in favor of defendant Caterpillar. We remand to the circuit court of McLean County for further proceedings.

Affirmed in part; reversed in part; and remanded.

MILLS, P. J., concurs.

Mr. JUSTICE WEBBER, concurring in part and dissenting in part:
I concur in the majority's affirmance of the summary judgment in favor of the individual defendant doctors, albeit for different reasons, but

I am compelled to dissent as to the reversal of the dismissal of the employer defendant, Caterpillar.

In my judgment the majority reads *Smith* too broadly and deals an unwarranted and near-lethal blow to the protection afforded by section 5(a) of the Workmen's Compensation Act.

The key holding in *Smith* was that the defendant had assumed a separate legal *persona* in becoming a lessor of the equipment and so it was in the cases cited in *Smith* as support for the dual capacity theory with which I have no quarrel. The theory exists and is part of the law of Illinois, but in order to apply it properly great care must be taken in order to ascertain the separate legal *persona*; otherwise, every multifunction employer will have forfeited his protection under the Act. The risk of planting the seed of a lawsuit in every fringe benefit may be too much to bear.

The separate *persona* in the cases cited in *Smith* is readily discernable. In *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512, it was owner-developer *vis-a-vis* contractor. In *Reed v. Steamship Yaka* (1963), 373 U.S. 410, 10 L. Ed. 2d 448, 83 S. Ct. 1349, the shipowner employed stevedores directly instead of obtaining them from a stevedoring company or a hiring hall. In *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437 359 N.E.2d 125, the contractor had become an indemnitor for one of his subcontractors.

The majority lays great stress on *Duprey v. Shane* (1952), 39 Cal. 2d 781, 249 P.2d 8. However, the vital distinction between *Duprey* and the case at bar is that in *Duprey* the defendant was performing the medical services directly and not simply paying the bill. The distinction is well put by Professor Larson:

> "When we come to the doctor-employer relation, the case becomes closer. The employer as employer is under a duty specifically imposed by the compensation act to provide medical treatment. Normally he would do this by supplying a physician. If he did so, and if the physician aggravated the injury by negligence, it is elementary that the employer could not be sued by the employee in tort. Why, the defendant will ask, should the result be any different merely because the employer happens to be in a position to provide the services personally? The answer, as is developed in greater depth in the next subsection in connection with carriers, lies in the difference between providing services in the sense of paying for them, and providing services by physically performing them. The doctor-patient relation, with all the legal obligations that it entails, does not spring up as the result of an essentially financial act—paying the doctor's bill. But it does spring

up as the result of undertaking to perform the medical treatment directly." 2A A. Larson, Workmen's Compensation §72.80 (1976).

There is no contention here that Caterpillar was practicing medicine, as indeed it could not, even under the Professional Service Corporation Act (Ill. Rev. Stat. 1977, ch. 32, pars. 451—1 *et seq.*). It was, therefore, in the words of Professor Larson only "paying the doctor's bill."

I do not quarrel with the application of the dual capacity doctrine in *Duprey* since it was quite apparent that the employer voluntarily stepped out of his *persona* as employer and assumed the unique relationship of physician-patient. The California appellate court later had occasion to consider the *Duprey* case in *Dixon v. Ford Motor Co.* (1975), 53 Cal. App. 3d 499, 125 Cal. Rptr. 872, and reasoned that if a medical facility were operated for the mutual benefit of the company and the employees, any negligent treatment would have been received in the course of employment and would preclude a common law cause of action against the employer and the employee-physician. The *Dixon* court refused to apply *Duprey* and found that case to be unique.

In the case at bar, plaintiff lays great stress on what he conceives to be unequal treatment under fortuitous circumstances, *i.e.*, if one employer should send all injured employees to a private physician for treatment and if another employer maintains an in-house medical facility staffed by employee-physicians, in the former case the employee's common law cause of action is preserved while in the latter case it is not. Without determining whether the first proposition be true, but assuming *arguendo* that it is, I find the contention to be without merit.

The Workmen's Compensation Act does not require any particular method of treatment. It requires only: "The employer shall provide and pay for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred * * *." (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a).) The employer retains the right to determine how this may be best accomplished. Without belaboring the point, it is apparent that some significant reasons can exist favoring an in-house facility, *e.g.*, the immediate availability of medical care, the ability of the employer to control the quality of medical care.

It is also significant that if an employee's prime concern is to preserve a potential common law action against a physician, the Workmen's Compensation Act also provides: "The employee may at any time elect to secure his own physician, surgeon and hospital services at the employer's expense, * * *." Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a).

In *Smith* the court referred to *Laffoon* in speaking of irrational and arbitrary classifications under the Act. However, both the *Smith* court and the *Laffoon* court were concerned with the very existence of coverage, not the manner in which coverage under the Act was accomplished.

I believe that as to Caterpillar, the requirements of the dual capacity doctrine have not been met. Caterpillar was providing medical services but only as a consequence of its status as an employer. The *Smith* court laid emphasis on the "coincidental" nature of the employer's status. (77 Ill. 2d 313, 320, 396 N.E.2d 524, 528.) That coincidental factor is not present here. The trial court properly dismissed as to Caterpillar.

I concur with the majority in affirming the summary judgment in favor of the defendant doctors. However, I would do so on the basis that since there is no liability on Caterpillar, there can be no liability on its agents or employees. The majority finds that there is immunity on the agents but it does not extend to the principal. This is apparently done on the basis described in Restatement of Agency §217(2), and Comment (b) (1933) thereto, which reads:

"Likewise, if an agent has an immunity from liability as distinguished from a privilege of acting, the principal does not share the immunity. Thus, if a servant, while acting within the scope of employment, negligently injures his wife, the master is subject to liability."

See also *Tallios v. Tallios* (1952), 345 Ill. App. 387, 103 N.E.2d 507, and the authorities there collected.

However, so far as I am aware, this doctrine has never been extended beyond a family situation even though the Restatement makes it of general application.

I would affirm the trial court in all particulars.