RUSSELL DEAN SHARP, Plaintiff-Appellant, *v.* ROBERT GALLAGHER *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-1590

Opinion filed March 26, 1981.

JIGANTI, J., dissenting.

Cooney & Stenn, of Chicago (John C. Bulger and Timothy R. Ocasek, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson and Charles H. Cole, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Russell Dean Sharp, appeals from an order of the circuit court of Cook County dismissing with prejudice his two-count action brought against defendants, Robert Gallagher and Daniel Henry, individually and doing business as Orchard Hill Building Company.[1] On appeal, plaintiff contends the trial court erred in granting defendants' motion to dismiss on the grounds that section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.5 (a)) barred both counts of the cause of action.

___

[1] The cause of action remains pending against Kolin Construction Company.

We reverse and remand.

Count I of plaintiff's amended complaint is based on the statutory cause of action for violations of the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, pars. 60 through 69). In this amended complaint, plaintiff alleges that on January 16, 1978, the defendants were in charge of the construction of a building located near 67th and Springside Streets in Downers Grove, Illinois. Plaintiff also asserts that the defendants willfully failed to erect, place, and operate, in a safe manner as required under the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60), the scaffold from which plaintiff fell. Plaintiff, who was employed to work on the scaffold, also contends that he was injured seriously when he slipped and fell from the scaffold. Plaintiff further alleges that the proximate cause of his injuries was the defendants' willful failure "to erect, place and operate the said scaffold in a safe, suitable and proper manner * * *."

Count II, based on common law negligence, reasserts the facts alleged in count I. It also sets forth specifically that the defendants failed to erect the scaffold in a safe manner, provided icy planks for use as scaffolding, and failed to warn plaintiff of the dangerous condition of the scaffold.

Defendants filed a section 48(1)(i) motion to dismiss (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i)) on the grounds that plaintiff previously had instituted proceedings before the Industrial Commission against his employer, Farmingdale Millwork (Farmingdale), "a wholly owned service organization" of defendant Orchard Hill, whose partners are defendants Gallagher and Henry. The motion concluded that, by virtue of the Farmingdale-Orchard Hill relationship, Orchard Hill was plaintiff's employer and section 5(a)[2] of the Workmen's Compensation Act barred the civil suit.

Plaintiff responded to defendants' motion by filing an affidavit containing a copy of defendant Gallagher's deposition in which Gallagher stated that plaintiff was an employee of Farmingdale. Gallagher also indicated that Orchard Hill owned the beneficial interest in the property upon which the building and scaffold were being constructed[3] when plaintiff was injured. Gallagher described Farmingdale as a "conduit" window service organization which supplied windows for buildings being constructed by Orchard Hill. Gallagher also asserted that Orchard

---

[2] Section 5(a) provides:

"No common law or statutory right to recover damages from the employer, * * * for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, * * *." Ill. Rev. Stat. 1977, ch. 48, par. 138.5(a).

[3] Orchard Hill was also the general contractor for the construction of the building.

Hill owned Farmingdale and that they (Orchard Hill and Farmingdale) were "the same thing." He further stated that Farmingdale's name appeared on plaintiff's paychecks and that plaintiff was an employee of Orchard Hill through Farmingdale.

In addition to his affidavit, plaintiff also submitted a copy of his claim for adjustment of workmen's compensation benefits which named Farmingdale as his employer. He also tendered copies of his 1977 and 1978 wage and tax statement forms which listed Farmingdale as his employer. After receiving certain information from defendants, plaintiff also filed copies of Farmingdale's and Orchard Hill's "Employer's Quarterly Federal Tax Returns" which indicated that they had separate employer identification numbers for this tax purpose.

Defendant Gallagher then filed his affidavit in which he asserted that Farmingdale was wholly owned by Orchard Hill. He also indicated that, in both 1977 and 1978, Farmingdale had a total of four employees, who were "carpenter helpers" employed in a nonsupervisory capacity. These four employees were supervised by foremen of Orchard Hill. He also asserted that Farmingdale was not a separate entity from Orchard Hill for income tax purposes and that all of Farmingdale's losses and profits were absorbed by Orchard Hill. Orchard Hill also paid the premiums for Farmingdale's workmen's compensation insurance policy.

Defendants also submitted an affidavit from Orchard Hill's accountant, Sam Levensen. He served as an auditor and maintained the financial books and records of Orchard Hill. Levensen claimed that Orchard Hill was the sole owner of Farmingdale. He also asserted that no separate Federal or State income tax was prepared on behalf of Farmingdale and that Farmingdale was not a separate business entity for general accounting or Federal income tax purposes. He further noted that all costs and expenses incurred by Farmingdale were totally reimbursable from the operation of Orchard Hill.

The trial court subsequently granted defendants' motion to dismiss on the grounds that Orchard Hill was plaintiff's employer and therefore entitled to immunity under section 5(a). This appeal followed.

OPINION

I

Plaintiff first contends that whether Farmingdale and Orchard Hill are separate business entities, and therefore separate employers, for purposes of the Workmen's Compensation Act is a question of fact which cannot be resolved on a motion to dismiss the action.

■■ Section 48 of the Illinois Civil Practice Act provides that a defendant may file a motion to dismiss the action on the grounds that the claim asserted is barred by other affirmative matter avoiding the legal effect of

or defeating the claim. (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i).) The section also permits affidavits to be filed in support thereof, if the grounds do not appear on the face of the pleading attacked. (Ill. Rev. Stat. 1977, ch. 110, par. 48(1); *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.) To counter the motion, plaintiff's affidavits should set forth the facts and all evidence necessary to raise a disputed question of fact. *Kinney v. Continental Assurance Co.* (1976), 42 Ill. App. 3d 263, 356 N.E.2d 131.

■■ ■ When facts within an affidavit are not contradicted by counter-affidavit, they must be taken as true notwithstanding the existence of contrary unsupported allegations in the adverse party's pleadings. (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34; *Galich v. Catholic Bishop* (1979), 75 Ill. App. 3d 538, 394 N.E.2d 572.) Failure to challenge the affidavits in support of or in opposition to the motion to dismiss constitutes an admission of the facts set forth. However, legal conclusions contained in the affidavits are not admitted. *Savarirayan v. English* (1977), 45 Ill. App. 3d 105, 359 N.E.2d 236.

Here, the facts alleged in plaintiff's affidavits disclose that Farmingdale is designated as the employer on plaintiff's 1977 and 1978 wage and tax statement forms, and that Orchard Hill and Farmingdale have separate employer identification numbers for purposes of the employer's quarterly Federal income tax withholding form. Defendants' affidavits assert that Farmingdale is owned by Orchard Hill, that no separate income tax return is prepared or filed on behalf of Farmingdale, that Farmingdale is not a separate business entity for accounting purposes, that all of Farmingdale's costs, expenses, and losses are totally reimbursed by Orchard Hill, and that, during 1977 and 1978, Farmingdale had four employees on its payroll who were supervised by foremen from Orchard Hill.

In Illinois, to summarily dispose of a case, the trial court must view the affidavits as substitutes for testimony which would be taken in open court and the trial court must conclude that if this were the only evidence to be presented to the trier of fact, a directed verdict in favor of the movant would be required. (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1978), 67 Ill. App. 3d 428, 384 N.E.2d 504.) Here, the facts alleged in the affidavits are not disputed by either party. Rather, it is the legal conclusion to be drawn from these facts—whether Farmingdale is a separate business entity—that is disputed. Thus, the affidavits do not present a genuine issue of fact.

■■ Plaintiff, however, argues that whether Farmingdale is a separate business entity is *per se* a question of fact. We disagree. What constitutes a partnership under a given set of facts is a question of law. (*Schmidt v.*

*Balling* (1900), 91 Ill. App. 388; *National Surety Co. v. T. B. Townsend Brick & Contracting Co.* (1898), 74 Ill. App. 312, *aff'd* (1898), 176 Ill. 156, 52 N.E. 938; see also *Grosshans & Petersen, Inc. v. Givens* (1963), 191 Kan. 650, 383 P.2d 959.) It follows, then, that whether a given set of facts establishes two different partnerships, or two different business entities, is also a question of law.

■■ We believe the trial court correctly decided that Farmingdale is not a business entity separate from the Orchard Hill partnership. That Farmingdale had a different name and employer identification number than Orchard Hill does not mean that Farmingdale is a separate business entity, particularly where, as here, it is not disputed that Farmingdale is not a separate business entity for Federal or State income tax purposes or general accounting purposes. Further, Orchard Hill performed all management functions for Farmingdale and absorbed its losses and profits. In our view, Farmingdale is so involved with the operation of Orchard Hill that, as a matter of law, it is not a separate business entity. (*Cf. Mains v. United States* (S.D. Ohio 1974), 372 F. Supp. 1093, *aff'd in part & rev'd in part on other grounds* (6th Cir. 1975), 508 F.2d 1251, *cert. denied* (1978), 439 U.S. 981, 58 L. Ed. 2d 652, 99 S. Ct. 569.) (In another context, the district court held there was only one business entity where all records and receipts were commingled and the home office maintained all management functions and paid all significant expenses.)

Accordingly, we hold that Farmingdale and Orchard Hill are the same business entity and, therefore, Orchard Hill is plaintiff's employer.

## II

Plaintiff next contends that even if Orchard Hill is his employer, the dual capacity doctrine applies and plaintiff may sue Gallagher and Henry individually and doing business as Orchard Hill in their second capacity as owners of the property upon which plaintiff was injured. Thus, plaintiff seeks to avoid the effect of section 5(a) by asserting the dual capacity doctrine.

■■ The dual capacity doctrine permits recovery by the employee from the employer if the injuries resulted from a breach of a duty independent of the duty of an employer *qua* employer. (See 2A A. Larson, Workmen's Compensation Law §72.80, at 14—112, 14—117 (1976).)[4] This doctrine

---

[4] Professor Larson explains that "the second persona is one recognized by law as having its own set of separate legal obligations such as *land owner* or doctor." (2A A. Larson, Workmen's Compensation Law §72.80, at 14—119.) (Emphasis added.) A dual capacity, however, will not be found merely because the employer has a number of departments or divisions that perhaps are quite separate in their functions and operations. (Larson, §72.80, at 14—115.) "The dual-capacity problem should not be confused with the more familiar question of legal entity." Larson, §72.80, at 14—115 n.14.

recently was invoked by our supreme court in *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524. In *Smith*, an employee of a joint venture filed an application before the Illinois Industrial Commission to adjust his claim against the joint venture for injuries sustained while operating an allegedly defective truck. He later instituted a civil action against a member of the joint venture who, pursuant to an express agreement, had leased the alleged defective truck to the joint venture. The agreement among the joint venturers provided that each joint venturer could, on an independent basis, supply equipment for the project at a fixed rental rate.

The supreme court dismissed counts I and II of the action which were premised upon violations of the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60) and negligence. The court reasoned that the defendant's duty to the employee as an agent of the joint venture was co-extensive with that of the principal, the joint venturer. Accordingly, the defendant was entitled to the protection of section 5(a) (Ill. Rev. Stat. 1977, ch. 48, par. 138.5(a)) by virtue of his status as member of the joint venture. This status, however, did not confer immunity to the defendant from the employee's third count based on strict liability in tort, since defendant occupied a dual capacity as lessor of the allegedly defective truck.

Noting that a lessor of a defective vehicle is held to the same strict liability standards as a manufacturer or seller, the court reasoned that defendant's liability as a lessor of equipment should not depend upon "whether it was solely a lessor or occupied the coincidental status of a member of the joint venture." 77 Ill. 2d 313, 320, 396 N.E.2d 524, 528.

In *Smith*, the supreme court explained the test to determine whether an employer occupies a dual capacity:

" '[A]n employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.' (2A A. Larson, Workmen's Compensation sec. 72.80, at 14—112 (1976); See also Kelly, *Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine*, 5 St. Mary's L.J. 818 (1974).) Professor Larson explains that the decisive test in applying the dual capacity doctrine *'is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer.'* (2A A. Larson, Workmen's Compensation sec. 72.80, at 14—117 (1976).) A mere separate theory of liability against the same legal person as the employer is not a true basis for use of the

dual capacity doctrine; the doctrine, instead, requires a distinct separate legal *persona*. (2A A. Larson, Workmen's Compensation sec. 72.80 (Supp. 1979).) Cited examples showing an employer in a dual capacity include: a shipowner employing stevedores (*Reed v. Steamship Yaka* (1963), 373 U.S. 410, 10 L. Ed. 2d 448, 83 S. Ct. 1349); *a landowner employing persons to work on his property* (*Marcus v. Greene* (1973), 13 Ill. App. 3d 699); and a chiropractor treating his own employee's work-related injuries (*Duprey v. Shane* (1952), 39 Cal. 2d 781, 249 P.2d 8)." *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 318-19, 396 N.E.2d 524, 527. (Emphasis added.) See also *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 359 N.E.2d 125.

The only distinguishing factors between the instant case and the *Marcus* case cited by *Smith* as an example of dual capacity are (1) the plaintiff here also charged defendants with common law negligence; and (2) in *Marcus*, the employer defendant, from whom the plaintiff ultimately recovered, was a co-owner of the property upon which the plaintiff was injured. In both cases, the actions are brought against an employer who is also a landowner,[5] "who in a different legal capacity than that of an employer has placed himself vulnerable to liability under the Structural Work Act."[6] *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 708, 300 N.E.2d 512, 518.

■■ The *Marcus* court reasoned that the duty of the owner in charge of the work under the Structural Work Act is entirely separate from the duty of the employer. Similarly, the duty of a landowner to one who comes upon his land to transact business in which the parties are mutually interested is to exercise reasonable care for his safety while he is on the premises. (*Wilkins v. Benevolent Order of Elks, Lodge No. 623* (1955), 5 Ill. App. 2d 370, 125 N.E.2d 549. See also *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709.) As Professor Larson notes:

"[I]t can at least be argued that the liability of the owner of land is different from that of an employer working on the premises. The legal doctrines governing the responsibilities of landowners to different classes of persons entering upon the land are ancient and

---

[5] Professor Larson notes that the "commonest type of dual-capacity case is that in which the employer's second set of obligations springs from his status as an owner." (2A A. Larson, Workmen's Compensation Law §72.80, at 14—113 (1976).)

[6] The Structural Work Act provides "Any owner, contractor, subcontractor, foreman, or other person having charge of the erection, construction ° ° ° of any building ° ° ° or other structure within the provisions of this act, shall comply with all the terms thereof ° ° °.

° ° ° For any injury to person ° ° °, occasioned by any wilful violations of this act, ° ° °, a right of action shall accrue ° ° ° for any direct damages °. ° °." Ill. Rev. Stat. 1977, ch. 48, par. 69.

distinctive, and again are different in quality and range from the rules governing the liability of a contractor to his employees." 2A A. Larson, Workmen's Compensation Law §72.80, at 14—117 (1976).

The rationale for avoiding the workmen's compensation employer immunity under such circumstances is that:

"[I]t would produce a harsh and incongruous result to distinguish between liability to employees injured under precisely the same circumstances simply because some worked on property owned by their employers and others worked on property owned by third parties." *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 708, 300 N.E.2d 512, 518.

■■ Marcus is cited by both Larson and the supreme court as an example of the dual capacity doctrine and, because of this precedent in a different factual context, the Fifth District recently held that section 5(a) afforded no immunity to the employer-defendant in *McCormick v. Caterpillar Tractor Co.* (1980), 82 Ill. App. 3d 77, 402 N.E.2d 412. Similarly, we believe we are bound by this precedent, and since, for purposes of dual capacity, are unable to distinguish between, on the one hand the obligations of land owners to invitees and the obligations of landowners in charge of work to employees, we hold that section 5(a) does not bar plaintiff's action.

We are cognizant of the supreme court's recent decision expressing concern for dual recovery. (*Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198.) Here, however, there is no showing that plaintiff executed a release or settlement which was subsequently approved by the Industrial Commission. As in *Smith v. Metropolitan Sanitary District*, the pleadings here merely reveal that plaintiff filed for an adjustment of claim. Thus, this case does not present a question of double recovery.

Likewise, the issue of whether the complaint states a good cause of action is not before us. For the first time on appeal, defendant argues that the complaint does not set forth ultimate facts which support a dual capacity contention, citing our decision in *Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 403 N.E.2d 555. In *Goetz* the facts alleged in the complaint disclosed that the employer could not be held strictly liable in tort because the employer manufactured the machine, which injured plaintiff, as an aid in its principal manufacturing business. The machine was a tool furnished to the employee; therefore, the employer was not in the business of manufacturing and selling the machine which injured the plaintiff—a necessary requirement to hold a manufacturer strictly liable in tort. *Luna v. Rossville Packing Co.* (1977), 54 Ill. App. 3d 290, 369 N.E.2d 612.

Here, on the other hand, plaintiff's affidavit contained a transcript of

defendant Gallagher's deposition, during which he admitted that Orchard Hill owned the property upon which plaintiff was injured. While defendant now asserts that the complaint does not allege facts showing a dual capacity, defendant does not state what facts are missing, nor did defendant specify any defect in the complaint in the trial court. Accordingly, the question whether this complaint states a good cause of action is not before this court on appeal since the trial court dismissed this action solely upon defendant's motion to dismiss on the grounds that the Workmen's Compensation Act barred the action. (*Keeran v. Wahl Co.* (1943), 320 Ill. App. 457, 51 N.E.2d 598.)[7] Rather, the sole issue is whether the Workmen's Compensation Act bars this action and we hold that it does not.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and this cause is remanded for trial on the merits.

Reversed and remanded.

ROMITI, P. J., concurs.

Mr. JUSTICE JIGANTI, dissenting:

Relying on the cases of *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512, and *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524, the majority of this court concludes that an employee can sue his employer for both common law negligence and for violations of the Structural Work Act if the employer is the owner of the land. I do not believe that those cases support that conclusion.

In *Smith* the defendant O'Neil was one of two joint venturers on a construction project. Smith was the employee of the joint venture. Pursuant to the joint venture agreement O'Neil leased a truck to the joint venture and was paid by the joint venture for leasing the truck to it. Smith was injured by the truck and filed an action against O'Neil under a products liability theory alleging that the truck was defective. The Illinois Supreme Court held that Smith had a right to bring the action. With respect to the products liability claim the court found that O'Neil's position as one of the joint venturers was no defense. It characterized O'Neil's status as joint venturer-employer as coincidental. *Smith*, at 320.

In *Marcus* the plaintiff Marcus filed an action alleging violations of the Structural Work Act against a partnership consisting of Herman

---

[7] We also note that the instant complaint was filed and dismissed prior to our decision in *Goetz.* Under similar circumstances, the supreme court has remanded the action to allow plaintiff an opportunity to amend her complaint to comply with the court's recently pronounced pleading requirements. See *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.

Schroeder and Jim Green and their wives. Green and Schroeder and their wives were the owners of the land. Jim Green, in addition to being a member of the partnership owning the land, was also the contractor who was retained by contract to construct the building on the land. Jim Green employed Marcus in his business as contractor. A jury brought in a verdict against the Green and Schroeder partnership. When Green sought to avoid liability because he was Marcus' employer the court found that he could not avoid liability because he happened to occupy the second status as an employer.

The coincidental status that the defendants in both *Smith* and *Marcus* occupied is distinguishable from the status the plaintiff occupied here where he was directly employed by the defendant. Here there was no circumstance which intervened to give the employer a second capacity. The plaintiff brings his action against the employer as his employer.

The concept advanced by the majority imposing common law liability on employers based on mere ownership of land provides a considerable exception to the rule that shields employers from common law liability because of the Workmen's Compensation Act. The effect of the majority opinion is that every employee who works for an employer who happens to own the land may have a common law cause of action for the employer's negligence despite the Workmen's Compensation Act.

There is another broad extension of liability of the employer which is not so clearly articulated in the opinion. That extension concerns the Structural Work Act. It appears as though the foundation of the liability of the employer here is the ownership of the land. The concept of ownership of land has no legal significance. The Structural Work Act imposes liability upon "any owner, contractor, subcontractor, foreman or other person having charge of * * *" the construction. The ownership referred to is only descriptive of a category of persons who may have charge of construction. Since the ownership has no significance in and of itself under the Act, the holding of the court here is in effect that any employee can sue his own employer for violations of the Structural Work Act. This is squarely at odds with *Smith* which held, in a part of the opinion not previously referred to in this dissent, that an employee had no cause of action against his employer under the Structural Work Act.

I would affirm the judgment of the trial court.